Milton Paul DuBOSE, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–96–204 CR.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 24, 1998.

Decided Nov. 4, 1998.

George E. Renneberg, Law Offices of William E. Hall, Jr., Conroe, for appellant.

Michael A. McDougal, Dist. Atty., Conroe, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

A jury convicted Milton Paul DuBose of murder. DuBose waived jury trial on punishment. The trial court assessed punishment at confinement in the Texas Department of Criminal Justice, Institutional Division, for 85 years. Six points of error are presented for appellate review.

■ Point of error one urges, "The trial court reversibly erred by taking into consideration, at the punishment phase of Appellant's trial, portions of the presentence investigation report which detailed extraneous offenses alleges to have been committed by the defendant, as such information was hearsay." Point of error two contends, "The trial court erred in considering unadjudicated extraneous crimes contained in the presentence investigation report as they were not shown beyond a reasonable doubt to

have been committed by Appellant as required by Art. 37.07 Sec. 3(a) V.A.C.C.P."

*Brown v. State*, 478 S.W.2d 550 (Tex.Crim. App.1972), held a trial court assessing punishment may consider hearsay statements contained in a presentence investigation report. *See also, Clay v. State*, 518 S.W.2d 550, 555 (Tex.Crim.App.1975). Dubose contends hearsay in the report is inadmissible under the Texas Rules of Criminal Evidence, and that *Brown* does not apply because it pre-dates the Texas Rules of Criminal Evidence. Three courts of appeals have relied on the rule stated in *Brown* in holding hearsay is admissible in cases decided after the effective date of the Texas Rules of Criminal Evidence. *Nicolopulos v. State*, 838 S.W.2d 327, 328 (Tex.App.—Texarkana 1992, no pet.), noted the trial court is specifically authorized by statute to consider the presentence investigation report, including hearsay regarding extraneous offenses. *Williams v. State*, 958 S.W.2d 844, 845–46 (Tex.App.— Houston [14th Dist.] 1997, pet. ref'd), held extraneous offenses presented to the judge in the form of hearsay in a presentence investigation report does not preclude their consideration by the trial court. *Accord, Stancliff v. State*, 852 S.W.2d 639, 641 (Tex.App.— Houston [14th Dist.] 1993, pet. ref'd)(holding that a defendant's allegation that information contained in the report is factually inaccurate does not render the report inadmissible). *Garcia v. State*, 930 S.W.2d 621, 623–24 (Tex. App.—Tyler 1996, no pet.), held Article 42.12, Sec. 9 specifies the criminal and social history of the defendant shall be included in the report, and reasoned that the accused may challenge the factual accuracy of its contents.

DuBose argues we should decline to follow these precedents. He argues *Brown* is distinguishable because it was decided prior to the 1993 amendment to Article 37.07 Sec. 3(a) of the Texas Code of Criminal Procedure.[1] We find this argument to be without

---

1. The 1993 amendment read as follows:

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may [~~, as permitted by the Rules of Evidence,~~] be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including *but not limited to* the prior criminal record of the defendant, his general reputation, [~~and~~] his character, *an*

*opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged*

merit. The 1993 amendment to Article 37.07 sec. 3(a) expanded rather than limited the scope of admissible evidence in the punishment phase of a criminal proceeding. There is no rational basis for concluding that the Legislature intended the amended act to prevent the trial court from considering matters the court could consider even when no unadjudicated extraneous offenses were admissible in the punishment phase. That Article 37.07 was not intended to affect Article 42.12, Sec. 9, is further evidenced by Article 37.07, Sec. 3(d), which provides, "When the judge assesses the punishment, he may order an investigative report as contemplated in Section 9 of Article 42.12 of this code and after considering the report, and after the hearing of the evidence hereinabove provided for, he shall forthwith announce his decision in open court as to the punishment to be assessed." TEX.CODE CRIM. PROC. ANN. art. 37.07, Sec. 3(d) (Vernon Supp.1998). We conclude the amendments to Article 37.07, Sec. 3(a) did not affect Article 42.12, Sec. 9.

■ DuBose also argues *Brown*, being an appeal from a guilty plea, is factually distinguishable from his case, in which conviction followed a not guilty plea to a jury, because a defendant who has admitted commission of the offense is not harmed by the presence of hearsay in a presentence investigation report. We find this distinction makes no difference. The issue of guilt has no bearing on the assessment of punishment; either the State proved the accused committed every element of the charged offense beyond a reasonable doubt, or it did not. One is not less guilty because a jury sat as the finder of fact, nor is one less deserving of a fair punishment hearing for pleading guilty. The distinction between presentence investigation reports and other punishment evidence lies not in the plea but in the statutory grant of discretion to the trial judge sitting as a fact finder in the punishment phase. When the punishment is assessed by the trial court, the presentence investigation report must be prepared if community supervision is an option at punishment, and may be prepared if community supervision is not an option. TEX.CODE CRIM. PROC. ANN. art. 42.12, Sec. 9(a, g) (Vernon Supp.1998). The presentence investigation and report may be utilized to assist the trial judge in the exercise of his discretion whenever an issue of the proper punishment is present. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex.Crim.App.1984). The defendant is not, as DuBose claims, deprived of an opportunity to challenge the credibility of the report, because he may comment on the report and introduce testimony or other information alleging a factual inaccuracy in the report. TEX.CODE CRIM. PROC. ANN. art. 42.12, Sec. 9(e) (Vernon Supp.1998). The express statutory provision for presentence investigation reports governs over the rules of criminal evidence. TEX.R.CRIM. EVID. 101.

■ That certain facts are extraneous to the charged offense and that a report of them is hearsay are two separate issues. *Brown*, relying on what was then Article 42.12, Sec. 4 of the Texas Code of Criminal Procedure,[2] settled the issue that presen-

---

*with or finally convicted of the crime or act.* [~~The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.~~] A court may consider as a factor in mitigating punishment the conduct of a defendant while participating in a program under *Chapter 17* [~~Article 17.40 or 17.42(a)~~] of this code as a condition of release on bail. Additionally, notwithstanding Rule 609(d), Texas Rules of Criminal Evidence, evidence may be offered by the state and the defendant of an adjudication of delinquency based on a violation by the defendant of a penal law of the grade of felony unless:

(1) the adjudication is based on conduct committed more than five years before the commission of the offense for which the person is being tried; and

(2) in the five years preceding the date of the commission of the offense for which the person is being tried, the person did not engage in conduct for which the person has been adjudicated as a delinquent child or a child in need of supervision and did not commit an offense for which the person has been convicted.

Acts 1993, 73rd Leg., R.S., Ch. 900, Sec. 5.05, 1993 Tex. Gen. Laws 3759 (amended Acts 1995, 74th Leg., R.S., Ch. 262, Sec. 82, 1995 Tex. Gen. Laws 2583; Acts 1997, 75th Leg., R.S., Ch. 1086, Sec. 31, 1997 Tex. Gen. Laws 4191).

**2.** The current version of the statute is even broader than the version which existed when the Court of Criminal Appeals decided *Brown*. Article 42.12, Sec. 9, Texas Code of Criminal Procedure, provides "the judge shall direct a supervision officer to report to the judge in writing on

tence investigation reports could contain hearsay. *Brown,* 478 S.W.2d at 551. *Nicolopulos, Williams, Stancliff,* and *Garcia* applied the rule stated in *Brown* to hearsay evidence of extraneous offenses. We agree with the conclusions reached by the courts in those opinions. The burden rests on the defendant to demonstrate the inaccuracy of material contained in the report. *Garcia,* 930 S.W.2d at 623–24; *Stancliff,* 852 S.W.2d at 641. DuBose presented his own version of the events leading to the complainant's death, but did not present evidence that the extraneous offenses were inaccurately reported in the presentence investigation report. Points of error one and two are overruled.

■ Point of error three contends, "The trial court erred in sustaining the State's objection to testimony by witness Teresa Baletka intended to establish that punishment should be imposed pursuant to Sec. 19.02(d) of the Penal Code." An informal bill will suffice as an offer of proof when it includes a concise statement of counsel's belief of what the testimony would show. *Moosavi v. State,* 711 S.W.2d 53, 55 (Tex.Crim. App.1986). When counsel intends to rely upon an informal bill to preserve error, the bill must include a summary of the proposed testimony. *Travis v. State,* 921 S.W.2d 559, 572 (Tex.App.—Beaumont 1996, no pet.). The record contains the question, "You know, do you not, that during the course of his relationship with the lady called [the victim], there were a number of violent episodes?" Without a bill of exception supplying the response, we may only speculate as to what the witness would have said. Finding no error preserved for review, we overrule point of error three.

■ The fourth point of error presents the issue, "Whether the trial court abused its discretion by failing to grant Appellant's motion for continuance." The physician who performed the autopsy of the victim attributed cause of death to blunt impact injuries of the head, chest, and abdomen, in the man-

ner of homicide. The doctor testified, "it looked like they were caused by someone beating her." Defense counsel filed an unverified motion for continuance seeking additional time to acquire an expert to rebut the pathologist's testimony. The next morning, defense counsel acknowledged the motion was not supported by affidavit, but assured the court the allegations contained therein were true.

■ All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance. TEX.CODE CRIM. PROC. ANN. art. 29.08 (Vernon 1989). The written motion for continuance filed after the trial has begun must also allege facts sufficient to constitute surprise and diligence. TEX.CODE CRIM. PROC. ANN. art. 29.13 (Vernon 1989). Further, since the motion is not self-proving, the record must contain an affidavit or otherwise reflect what the absent witness would have testified to. *Gentry v. State,* 770 S.W.2d 780, 786 (Tex.Crim.App.1988). The motion contained in the record does not meet the requirements of Articles 29.08 and 29.13. The indictment alleged DuBose committed an act clearly dangerous to human life, by hitting the complainant with his hands and arms and fists and kicking her with his legs and feet. Assuming the motion for continuance was properly before the trial court, the trial court could have reasonably concluded DuBose could have anticipated the need for expert testimony to contest the cause of death even if the autopsy report stated the source of the blunt trauma was unknown. The trial court denied the motion for continuance within the scope of its discretion. The fourth point of error is overruled.

■ The final two points of error challenge the legal and factual sufficiency of the evidence to support the conviction. In reviewing the legal sufficiency of the evidence, we consider all the record evidence in the light most favorable to the trial court's verdict and determine whether, based on that evidence and all reasonable inferences there-

---

the circumstances of the offense with which the defendant is charged, the amount of restitution necessary to adequately compensate a victim of the offense, the criminal and social history of the

defendant, and any other information relating to the defendant or the offense requested by the judge." TEX.CODE CRIM. PROC. ANN. art. 42.12, Sec. 9(a) (Vernon Supp.1998).

from, any rational trier of fact could have found appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). The test is the same for both direct and circumstantial evidence cases. *Id.* at 159–61.

In determining the factual sufficiency of the evidence, we review all of the evidence impartially, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 134–35 (Tex.Crim.App.1996). Defense evidence and alternate reasonable hypotheses may be considered. *Id.* at 134. We review the evidence weighed by the jury which tends to prove the existence of the elemental fact in dispute, and compare it to the evidence which tends to disprove that fact. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We may reverse a judgment for factual insufficiency even if probative evidence exists which supports the verdict, but cannot substitute our own judgment for that of the fact finder. *Id.; Clewis*, 922 S.W.2d at 133. We "must defer to jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice." *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). If the verdict is so against the great weight and preponderance of the evidence presented at trial so as to be clearly wrong and unjust, we will reverse the judgment and remand to the trial court for a new trial. *Clewis*, 922 S.W.2d at 135.

The jury is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given to the testimony. Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). "Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996), *cert. denied*, — U.S. —, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). The jury may believe or disbelieve all or any part of a witness's testimony, even though the witness's testimony has been contradicted. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim.App.1986).

DuBose argues the State failed to prove the victim's injuries were inflicted by hands, arms, legs, or feet, as alleged in the indictment. Harris County Assistant Medical Examiner Dr. Marilyn Murr testified the autopsy of the deceased revealed a number of abrasions and contusions on the head, torso, abdomen, legs, arms, and back. She discovered skull fractures and both subgaleal and subarachnoid hemorrhage. Dr. Murr testified the skull fractures were caused by a very forceful blow. The subgaleal hemorrhaging was the result of blunt trauma. The liver had been ruptured into two pieces. Such an injury would take an extreme amount of force, kicking or a very strong person repeatedly punching. Seven ribs were broken clean through. Cause of death was blunt impact injuries of the head, chest, and abdomen, consistent with being beaten with hands, arms, or fists, and with being kicked with feet and legs. Dr. Murr also testified the injuries could not be caused by an individual falling flat on her face once, by a person falling on top of her, or by head butting. The doctor opined the deceased had been brutally beaten, repetitively punched and kicked.

On cross-examination, Dr. Murr testified the bruising to the deceased's abdomen did not look like it had been inflicted by an instrument other than a foot or a fist. Such a huge injury to the liver could not have been caused by a large amount of force applied to the front of the body one time.

DuBose's video-taped statement was published to the jury. He maintained the victim, his girlfriend, passed out drunk and fell on her face. He picked her up and let her go, and slapped her on the face to wake her up. He got her to bed and fell asleep next to her, and when he awoke the next day she was dead. DuBose admitted having beaten the victim before, and admitted it was "very possible I could have done it" but that he did not know and could not remember.

In DuBose's presentence investigation statement, DuBose admits he and the complainant had been arguing over his encounter with an old girlfriend, and, although he claimed the injuries were caused by a fall, admitted they were together when the fatal injuries were inflicted.

DuBose argues the "utter want of candor" in the pathologist's testimony fails to meet the test for a rational trier of fact to conclude DuBose killed the victim with his feet and hands. In the alternative, he argues Murr's testimony is not credible because she refused to concede the injuries might have been caused by an instrumentality other than hands and feet. We disagree. Dr. Murr's description of the injuries to the body and her expert opinion that the injuries were consistent with a severe beating by punches and kicks, established death was caused in the manner and means alleged in the indictment. Her testimony was not so incredible that the jury could not have rationally given it any weight in determining the manner and means by which the fatal injuries were inflicted. Viewing the evidence in the light most favorable to the verdict, we hold the jury could rationally find the complainant died the manner and means alleged in the indictment. Viewing all of the evidence impartially, we find the evidence supporting the existence of an alternate hypothesis, other than the guilt of the accused as alleged in the indictment, is not so overwhelming as merit reversal of the judgment. We hold the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Points of error five and six are overruled. The judgment and sentence of the trial court are affirmed.

AFFIRMED.