Wendell Roy **MITCHEL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–06–00369–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 7, 2008.

Discretionary Review Refused Sept. 10, 2008.

Joseph Salhab, Cornelius & Salhab, Houston, for appellant.

Dan McCrory, Asst. Dist. Atty., Houston, for appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

A jury found appellant, Wendell Roy Mitchel, guilty of attempted capital murder [1] and assessed punishment at confinement for 75 years and a fine of $10,000. In two points of error, appellant argues that (1) the trial court erred in finding appellant's confession voluntary and (2) the trial court's charge improperly instructed the jury that it must unanimously acquit appellant of attempted capital murder before it could consider a lesser charge.

We affirm.

## Background

In the early morning hours of April 22, 2005, appellant shot Houston Police Department Officer R. Montelongo during a routine traffic stop. After the shooting, Officer Montelongo was able to return to his patrol car and inform his dispatcher of his injury. When other officers arrived on the scene, Officer Montelongo passed on information about appellant, including his driver's license, which Officer Montelongo had received from appellant before the shooting, and a description of appellant's vehicle and license plate number.

A short time after the shooting, Officer R. Feusse saw appellant driving the same vehicle approximately ten miles from the location of the shooting. Officer Feusse attempted to pull appellant over, but appellant refused to stop. Officer Feusse pursued appellant until appellant wrecked his car in a ditch and fled on foot. Officer Feusse radioed the dispatcher with information of the direction of appellant's flight and the location of appellant's vehicle. After several hours of searching, a team of ten to twenty officers found appellant in an abandoned home and arrested him.

Appellant claims that he overheard unidentified police officers state that appellant was lucky that he was found by the officers who arrested him because if they had found him first, they would have shot him. Appellant was transported to the police station by Officers Gill and Harris. Appellant alleges that the officers told him "it was best that [he] cooperate with the officers once [he] got downtown because ... there was a possibility that they would threaten [him]." Appellant understood this comment to mean that he might be harmed once he reached the police station, but he admitted that Officers Gill and Harris never threatened him.

At the station, Officers Gill and Harris delivered appellant directly to Sergeant B. McDaniel, who testified that appellant did not seem fearful of Officers Gill and Harris and that he offered appellant food, drink, and the use of the restroom before placing appellant in the interview room. Appellant claims that he was refused the opportunity to make a phone call to his family lawyer prior to meeting with Sergeant McDaniel, but Sergeant McDaniel testified that appellant never asked to call his lawyer.

Sergeant McDaniel, wearing plainclothes with no visible weapon, interviewed appellant by himself. McDaniel testified that he advised appellant of his rights and that appellant appeared to understand his rights and waived them. McDaniel also testified that he did not make appellant any promises or coerce appellant in any way. Appellant alleged that he was "un-

---

1. *See* TEX. PEN.CODE ANN. §§ 15.01(a), 19.02(b)(1), 19.03(a)(1) (Vernon 2003 & Vernon Supp.2007).

der heavy pressure" to cooperate while he gave his videotaped statement and believed that some harm might come to him if he did not do as the officers asked, but he also admitted that Sergeant McDaniel did not threaten him. Sergeant McDaniel testified that appellant appeared "a bit sullen . . ., a little sad," but appellant did not appear nervous.

After approximately 20 to 30 minutes of unrecorded interview, appellant gave a videotaped statement. Sergeant McDaniel once again advised appellant of his rights, including his right to an attorney, and appellant waived them. In his statement, appellant admitted he fired a shot at Officer Montelongo, but only with the intent to scare him away. Appellant claimed he did not intend to hurt the officer. Appellant testified that no officer threatened him, promised him anything, or coerced him in any way prior to the giving of his statement.

Appellant challenged the voluntariness of his confession, and the trial court held a suppression hearing. After the foregoing evidence was presented at the hearing, the trial court ruled that the statement was admissible and entered findings of facts, including that appellant never asked for an attorney prior to giving his statement, never requested that the interview be terminated, and knowingly, intelligently, and voluntarily waived his rights.

At trial, appellant relied on the argument that he was not guilty of attempted capital murder because he did not intend to hurt Officer Montelongo. Appellant argued that he shot Officer Montelongo in order to scare him so that appellant could drive away. In his closing arguments and his appellate brief, appellant emphasized that the wound was not fatal and that he never fired a second shot after Officer Montelongo ran back toward his patrol car. The State argued that appellant shot at Officer Montelongo with the intent to kill him, and, therefore, he was guilty of attempted capital murder. The State points to the evidence that appellant aimed his weapon at the officer's face from a distance of a little more than 12 inches. The bullet entered his left cheek and exited near his left ear, and the emergency room doctor testified that the wound would easily have been fatal if the trajectory of the bullet had varied even slightly.

The trial court presented its charge to the jury. The charge instructed the jury on the elements of attempted capital murder, then stated, "Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of attempted capital murder of a peace officer and next consider whether the defendant is guilty of aggravated assault on a public servant." The charge gave an instruction on the elements of aggravated assault on a public servant, and a similar instruction to the one quoted above followed. The charge gave an instruction on the elements of deadly conduct which was followed by the final instruction:

If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either attempted capital murder of a peace officer or aggravated assault on a public servant on the one hand or deadly conduct on the other hand, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of deadly conduct.

If you have reasonable doubt as to whether the defendant is guilty of any offense defined in this charge you will acquit the defendant and say by your verdict "Not Guilty."

Appellant requested and received the instruction on the lesser included offense

of deadly conduct and had no other objections to the jury charge. The jury found appellant guilty of attempted capital murder and assessed punishment at confinement for 75 years.

## Appellant's Confession

In his first point of error, appellant contends that the trial court erred in finding his confession voluntary.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App.2006). We review the record in the light most favorable to the trial court's conclusion. *Id.* We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990)). We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of the law to those facts. *Id.*

A statement may be deemed involuntary in instances of noncompliance with Texas Code of Criminal Procedure article 38.22, instances of noncompliance with the dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or when there is a violation of due process or due course of law like coercion or threats. *Moore v. State*, 233 S.W.3d 32, 44 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (citing *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex.Crim.App.1996)). The court examining the admissibility of the confession must determine whether, in the totality of the circumstances, the defendant was coerced to such a degree that the coercion, rather than his free will, produced the statement. *Id.* (citing *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1995)).

Once a defendant raises the question of voluntariness, the State has the burden to controvert the defendant's evidence and must prove the voluntariness of the confession by a preponderance of the evidence. *Alvarado*, 912 S.W.2d at 211. If the defendant's evidence is not controverted by the State, then the confession is inadmissible as a matter of law. *Brownlee v. State*, 944 S.W.2d 463, 467 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd). However, it is only necessary for the State to controvert the evidence—it is not necessary for the State to rebut the evidence. *Muniz v. State*, 851 S.W.2d 238, 252 (Tex. Crim.App.1993). The trial court is free to believe or disbelieve, in whole or in part, any witness's testimony. *Sells v. State*, 121 S.W.3d 748, 767 (Tex.Crim.App.2003).

### Analysis

Here, appellant raised the issue of the voluntariness of his confession, claiming that he had felt pressured into cooperating and giving the videotaped statement. He also claimed that he was denied the opportunity to make a phone call to his family attorney. At the suppression hearing, the State controverted this testimony with the testimony of Sergeant McDaniel, who testified that appellant was neither fearful of the officers who had transported him to the police station, nor nervous or fearful during the interview. Sergeant McDaniel further testified that he advised appellant of his rights twice, including his right to counsel and that appellant waived those rights twice and never asked for his attorney or for Sergeant McDaniel to stop the interview. The trial court viewed the videotaped confession which showed one of the instances when Sergeant McDaniel informed appellant of his rights and appellant waived them. When Sergeant McDaniel specifically asked appellant if he had been threatened, made any promises,

or coerced in any way, appellant answered no.

◼ We conclude that the trial court's findings that appellant testified that no officer threatened him, promised him anything, or coerced him in any way prior to making his statement, that appellant never asked for an attorney prior to giving his statement, that appellant never requested that the interview be terminated, and that, prior to giving the videotaped statement, appellant knowingly, intelligently, and voluntarily waived the rights set out in article 38.22 of the Texas Code of Criminal Procedure are all supported by the evidence in the record. *See Dixon*, 206 S.W.3d at 590; *see also Dykes v. State*, 657 S.W.2d 796, 797 (Tex.Crim.App.1983) (holding that an officer's advising a suspect to cooperate does not amount to coercion). These facts establish that the taking of appellant's statement complied with article 38.22 of the Texas Code of the Criminal Procedure and with the dictates of *Miranda* and that there was no coercion or other violation of due process. *See Moore*, 233 S.W.3d at 44. Therefore, the trial court was within its discretion in ruling that the confession was admissible. *See Dixon*, 206 S.W.3d at 590.

We overrule appellant's first point of error.

### Jury Charge

◼ In his second point of error, appellant argues that the jury charge was improper. Specifically, appellant argues that the trial court erred by instructing the jury that it must unanimously acquit him of the greater offense before considering the lesser included offense. The specific instruction appellant complains of stated, "Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of attempted capital murder of a peace officer and next consider wheth-

er the defendant is guilty of aggravated assault on a public servant."

### *Standard of Review*

◼ We review jury charge error in a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex.Crim.App.2005). First, we determine whether error exists in the charge. *Id.* at 743. If there is error, we then review the record to determine whether sufficient harm was caused by the error to require reversal of conviction. *Id.* When, as here, the charging error is not preserved, reversal is not required unless the harm is egregious. *Id.* at 743–44.

### *Analysis*

The type of instruction used in this case was suggested to be proper by the Court of Criminal Appeals. *See Boyett v. State*, 692 S.W.2d 512, 515 (Tex.Crim.App.1985). In *Boyett*, the Texas Court of Criminal Appeals held that a jury charge should "explicitly" instruct jurors that if they do not believe, or if they have reasonable doubt of, an accused's guilt of a greater offense, "they should acquit" the accused of the greater offense and "proceed to consider whether [the accused is] guilty of a lesser-included offense." *Id.* Furthermore, the *Boyett* court stated that it is best "to instruct the jury that if it has a reasonable doubt as to whether a defendant is guilty of any offense defined in the charge, it will find the defendant not guilty" and that this instruction should be located "after the last lesser included offense in the charge." *Id.* at 516.

The instruction given to the jury in this case complies with the principles set forth in *Boyett*. *See id.* at 515–16. The jury charge explicitly stated what was required to find appellant guilty of the charged offense, then stated, "Unless you so find from the evidence beyond a reasonable

doubt, or if you have reasonable doubt thereof, you will acquit the defendant of attempted capital murder of a peace officer and next consider whether the defendant is guilty of [a lesser included offense]." As the State points out in its brief, this instruction requires post-acquittal consideration of a lesser offense, but it does not prohibit pre-acquittal consideration of a lesser offense. This is demonstrated by considering the instruction that follows the last lesser included offense:

> If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either attempted capital murder of a peace officer or aggravated assault on a public servant on the one hand or deadly conduct on the other hand, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of deadly conduct.

> If you have reasonable doubt as to whether the defendant is guilty of any offense defined in this charge you will acquit the defendant and say by your verdict "Not Guilty."

This instruction clearly contemplated that the jury would consider the lesser offense before unanimously deciding to acquit of the greater offense. The instruction as written is incompatible with appellant's interpretation of the challenged instruction as requiring a unanimous acquittal before considering lesser included offenses. Thus, appellant's argument that the challenged instruction required the jury to unanimously acquit him of the greater offense before it could consider the lesser offense is misguided.

Moreover, appellant overlooks the fact that the jury charge was intended to be read as a whole. *See Boyett*, 692 S.W.2d at 516. The charge instructed jurors that having a reasonable doubt of appellant's guilt of the greater offense amounted to an acquittal of that offense and required that jurors consider the lesser offenses. The charge then required that, if the jurors had a reasonable doubt as to whether appellant was guilty of the greater offense or the lesser included offense, the jurors must resolve any doubt by finding appellant guilty of the lesser offense. When read together, these two instructions properly instructed jurors regarding the effect of their having had a reasonable doubt as to any charged offense.

Another reason for rejecting appellant's premise that the challenged instruction required unanimity regarding reasonable doubt before proceeding is that the only mention of unanimity occurred at the end of the jury charge regarding the foreman's certification duties once the jury had "unanimously agreed upon a verdict."[2] *See Campbell v. State*, 227 S.W.3d 326,

---

2. Appellant argued that the State made an improper jury argument when it argued that the only way the jury could consider the lesser included offense of deadly conduct was if "you all agree[,] the 12 of you[,] that there is a reasonable doubt that [appellant] is guilty of attempted capital murder." The State explained that they could then consider the lesser included offenses. The State argued, "[Y]ou have to go through those steps first.... Not guilty of attempted capital murder, all of you, not guilty of aggravated assault on a public servant, all of you[,] before you get [to considering deadly conduct]." Appel-

lant did not preserve this complaint because he did not make any objections to the State's jury arguments at trial. *See* Tex.R.App. P. 33.1; *Archie v. State*, 221 S.W.3d 695, 699 (Tex.Crim.App.2007) (holding that a defendant must obtain an adverse ruling on his objection to jury argument in order to preserve the error). Furthermore, appellant's trial attorney elaborated on the instructions on the lesser included offense in his jury argument, and the jury charge itself admonished the jury that it must be governed by the law as it is set out in "these written instructions."

328–29 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (noting that unanimity is not mention in the charge until the language at the end regarding the foreman's duty to certify the verdict once the jury had "unanimously agreed"). Because there was no error in the charge we do not need to address whether there was egregious harm. *See Ngo,* 175 S.W.3d at 743–44.

We overrule appellant's second point of error.

### Conclusion

We affirm the judgment of the trial court.