Opinion issued April 22, 2009 








 










In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00391-CR

____________


KENNETH EUGENE HARRIS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No. 1055272






EN BANC OPINION

 Under Texas Rule of Appellate Procedure 50, we withdraw our January 29,
2009 en banc opinion, substitute this opinion in its place, and vacate our January 29,
2009 judgment.

 A jury found appellant, Kenneth Eugene Harris, guilty of the offense of
manslaughter with a deadly weapon (1) and assessed his punishment at confinement for
twenty years. In four points of error, appellant contends that the trial court erred in
instructing the jury to unanimously agree to acquit him of the offense of manslaughter
before considering whether he was guilty of the lesser-included offense of criminally
negligent homicide, in overruling his objection to the State's argument that the jury
must unanimously agree to acquit him of the offense of manslaughter before
considering whether he was guilty of the lesser-included offense of criminally
negligent homicide, in permitting an expert witness to testify when the State did not
disclose the witness to him before trial, and in overruling his motion for continuance
when the State's undisclosed, expert witness testified against him.

 We affirm.

Factual Background

Brian Barrett, the boyfriend of the complainant, LaTonya Comeaux, testified
that on July 10, 2005 at approximately 2:00 a.m., he and a group of five or six people
left Mr. Gino's nightclub. Barrett's group decided to cross Cullen Boulevard, a four-lane road with a median in between the two northbound and two southbound lanes,
in front of the nightclub, instead of walking to the nearest intersection, because they
"were just following the crowd." Barrett and the complainant separately crossed the
street in order to get to his car in a parking lot. He explained that, after the
complainant had "just" stepped onto the curb, (2) a car, traveling "at least" forty miles
per hour, collided with the complainant. After the car collided with the complainant,
the driver of the car stopped for approximately "15 seconds" before leaving the scene. 
Emergency paramedics pronounced the complainant dead at the scene.

Keisha James testified that on July 10, 2005, after leaving the nightclub at
approximately 1:50 a.m., she was riding as a front-seat passenger in another car when
she suddenly heard a screeching noise for "[m]aybe a couple of seconds" to "five
seconds" and a subsequent "boom." James turned around upon hearing the
screeching and saw that a dark-colored Pontiac went up on the curb, striking the
complainant on its front windshield, which caused the complainant to land in the
street. When the Pontiac came off of the curb and back onto the street, the driver
"was driving slowly[,] trying to avoid the [complainant] on the ground," and it
"seemed" like the Pontiac ran over the complainant. 

Being in the next lane over from the car, James saw that a "young[,] black male
with a low cut" drove the car that had collided with the complainant. As the car
passed James, she memorized the car's license plate number. After police officers
arrived at the scene, James told them the license plate number of the car that had
collided with the complainant. Two days after the collision, Houston Police
Department Sergeant A. Davis showed James a photographic array, and she identified
appellant as the driver of the car that struck the complainant.

Houston Police Department Officer S. Martinez testified that he arrived on the
scene approximately thirty minutes after the collision and immediately began
reconstructing the accident and gathering evidence. Martinez opined that, given the
approximately 225 feet of skid marks made by appellant's car at the scene, the car
must have been traveling at approximately seventy-three miles per hour in a forty
mile per hour speed zone before it struck the complainant. Martinez also noted that
the "area was not well-lit," but "it was lit enough to where [a person] would have seen
a pedestrian crossing the street." Martinez further added that it would have been
"safest" for the complainant to have crossed the "four-lane" street at an intersection. 
Martinez stated that the complainant wore a "black and white" dress, which was
primarily "white." (3) 

Houston Police Department Officer T. Perrin testified that "lighting was not a
factor" in causing the collision and it would not have been difficult for appellant to
have seen the complainant crossing the street, even though the complainant wore dark
clothing. 

Houston Police Department Officer R. Gonzales testified that at the time of the
collision, the weather was "cloudy," the road was "dry," and there was "a lot of
artificial lighting" in the area. (4) Gonzales added that there was not a crosswalk for the
nightclub's patrons to cross when going to the parking lot and the nightclub was not
near an intersection. Thus, Gonzales noted that it was likely that the complainant was
not crossing at an intersection or crosswalk when the collision occurred. 

Officer Gonzales further testified that on July 10, 2005, he was working at the
nightclub. After the collision, witnesses informed Gonzales that a green-colored,
Grand Prix Pontiac had struck the complainant. The witnesses also told him the
license plate number of the car that had struck the complainant. By talking to people
he knew in the nightclub and the local neighborhood, Gonzales "put the word out"
of the description of the suspect's car. A few weeks later, Gonzales received a tip
about a car which matched the description at 4611 Brinkley in Houston.

Houston Police Department Officer W. Wallace testified that he accompanied
Officer Gonzales to 4611 Brinkley. When they arrived at the address, they
immediately recognized that the car's license plate number matched the license plate
number given to Gonzales by the witnesses to the collision. After removing a tarp
from the front windshield, Wallace noticed that the front windshield was broken and
there was blood, hair, and an earring inside of the car. Identigene Forensic DNA
Analyst Jennifer Otto testified that the DNA from the blood and hair recovered from
the car matched the complainant's DNA. After processing the car's information,
Wallace learned that Ben Davis was the registered owner of the car.

Davis testified that, although the Grand Prix Pontiac car was registered under
his name, he had sold the car to his cousin, appellant, in March of 2005. Davis and
appellant agreed that appellant was to assume the car payments and, once appellant
finished paying off the car, Davis would pass title to appellant. Davis verified that
appellant lived at 4611 Brinkley.

Jury Charge

In his first point of error, appellant argues that the trial court erred in
instructing "the jury to agree unanimously to acquit appellant of manslaughter before
it could consider whether [appellant] was guilty of the lesser included offense of
criminally negligent homicide" because this "sequencing" instruction, also referred
to by appellant as an "acquittal first" instruction, "results in undue restrictions and
pressure on the jury," "encourages mistrials," and "impedes judicial economy." As
the fundamental premise to his argument, appellant asserts that "[t]he law does not
require that the jury unanimously agree that an accused is not guilty of a greater
offense before they may consider a lesser offense." 

In analyzing a jury-charge issue, our first duty is to decide if error exists. 
Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). Only if we find
error, do we then analyze that error for harm. Id. 

Appellant complains of the following provision of the trial court's jury charge:
"Unless you so find from the evidence beyond a reasonable doubt, or if you have a
reasonable doubt thereof, you will acquit the defendant of manslaughter and next
consider whether the defendant is guilty of the lesser offense of criminally negligent
homicide." (Emphasis added). 

In Boyett v. State, the Texas Court of Criminal Appeals explained that when
a jury is asked to consider lesser-included offenses in determining the guilt of a
defendant, the jury charge should "explicitly" instruct jurors that if they do not
believe, or if they have a reasonable doubt of a defendant's guilt of a greater offense,
"they should acquit" the defendant of the greater offense and then "proceed to
consider whether [the defendant is] guilty of the lesser included offense." 692
S.W.2d 512, 515 (Tex. Crim. App. 1985). Although appellant acknowledges that the
Texas Court of Criminal Appeals in Boyett expressly approved of the "acquittal first"
instruction that he complains of here, he contends that,

 The majority opinion [in Boyett] relied solely upon a form book sample
jury charge for its holding that the jury charge should have instructed the
jury to acquit the defendant of the greater offense before considering a
lesser offense. The majority opinion did not explain why a unanimous
agreement to acquit of a greater offense is required before the jury is
allowed to consider guilt of a lesser included offense.


Appellant asserts that there is "no such requirement under Texas statutory or
constitutional law," citing Hutson v. State, No. 03-99-00523-CR, 2000 WL 298675
(Tex. App.--Austin Mar. 23, 2000, pet. ref'd) (not designated for publication). In
Hutson, the Third Court of Appeals, referring to article 37.14 of the Texas Code of
Criminal Procedure, (5) opined that "Texas law contemplates [that] the courts may give
juries free choice among greater and lesser-included offenses" as "options rather than
a sequence of choices descending from the greatest offense"; "otherwise there would
be no need for the statute establishing that conviction of a lesser-included offense
implies acquittal of greater offenses." Id. at *1. Appellant concludes, therefore, that
"a defendant is not harmed by the jury considering greater and lesser offenses as
options, rather than sequential choices," but is harmed by the "acquittal first"
instruction. 

In addressing the same argument in a different case, this Court recently stated
that the argument that the challenged instruction "required the jury to unanimously
acquit him of the greater offense before it could consider the lesser offense is
misguided." Mitchel v. State, 264 S.W.3d 244, 250 (Tex. App.--Houston [1st Dist.]
2008, pet. ref'd). This Court concluded that, although the instruction "requires post-acquittal consideration of a lesser offense," it "does not prohibit pre-acquittal
consideration of a lesser offense." Id. This conclusion was based on the fact that the
charge there also instructed the jury that if the jury believed beyond a reasonable
doubt that the defendant was guilty of either the greater offense or the lesser-included
offense, but had a reasonable doubt as to whether the defendant was guilty of the
greater offense or the lesser-included offense, the jury had to "'resolve that doubt in
the defendant's favor and find him guilty of the lesser offense . . . .'" (6) Id. 

Our reasoning in Mitchel was based upon the false assumption that the
instruction allowing a jury to "resolve [] doubt in [a] defendant's favor and find him
guilty of [a] lesser offense," is a required instruction. Id. However, nothing in the
Code of Criminal Procedure or case law requires such an instruction. This Court, in
Mitchel, also noted that another reason for "rejecting [the defendant's] premise that
the challenged instruction required unanimity regarding reasonable doubt before
proceeding is that the only mention of unanimity occurred at the end of the jury
charge regarding the foreman's certification duties once the jury had 'unanimously
agreed upon a verdict.'" Id. However, this reasoning, as demonstrated below, fails
to consider what the Code of Criminal Procedure and Boyett actually require. 

Prior to Mitchel, this Court had previously assumed, without deciding, that the
complained-of charge "required that the jury unanimously agree to acquit [the
defendant] of the greater offense before it could consider the lesser offenses and that
[such a] unanimity requirement was erroneous." Campbell v. State, 227 S.W.3d 326,
329 (Tex. App.--Houston [1st Dist.] 2007, no pet.). Assuming error, we held that the
defendant failed to show that he was harmed by the trial court's charge "even if that
charge required the jury unanimously to acquit [the defendant] of the greater offense
before it could consider a lesser-included offense." Id. at 332. Nevertheless, this
Court noted that "it is not entirely clear that the complained-of charge language
requires a unanimous acquittal of the greater offense before the jury may proceed to
consider a lesser-included offense or, for that matter, that such a unanimity
requirement would be erroneous." Id. at 328 (emphasis added). 

Today, we conclude that such a unanimity requirement is not erroneous and is,
in fact, required by the Code of Criminal Procedure and Boyett. We expressly hold
that the trial court did not err in instructing the jury to agree unanimously to acquit
appellant of manslaughter before determining whether appellant was guilty of the
lesser-included offense of criminally negligent homicide. Accordingly, we overrule
Mitchel to the extent that it conflicts with our holding today. (7) 

In reaching our holding, we respectfully disagree with the Third Court of
Appeals's statement that Texas law "contemplates" that trial courts should "give
juries free choice among greater and lesser-included offenses" as "options rather than
a sequence of choices descending from the greatest offense." See Hutson, 2000 WL
298675, at *1. Article 37.14 of the Texas Code of Criminal Procedure, upon which
the Third Court of Appeals relied upon in drawing its conclusion, provides that if a
defendant is indicted and tried for committing a higher offense, but the fact-finder
finds him guilty only of a lesser-included offense, the verdict "shall be considered an
acquittal of the higher offense." Tex. Code Crim. Proc. Ann. art. 37.14 (Vernon
2006). It does not logically follow that trial courts should give juries "free choice
among greater and lesser-included offenses" as "options rather than a sequence of
choices descending from the greatest offense." See Hutson, 2000 WL 298675, at *1. 

Rather, because a unanimous finding of guilt on a lesser-included offense
necessarily requires a unanimous acquittal on the higher offense, a defendant loses
nothing to which he is entitled when a trial court utilizes a "sequencing" or "acquittal
first" instruction. Article 37.14 says nothing about how a trial court is to instruct
juries on lesser-included offenses. See Tex. Code Crim. Proc. Ann. art. 37.14. 
Contrary to appellant's assertion, it does not "contemplate" a "free choice" among
conviction "options" in a jury charge as opposed to "sequential choices." See id. 

The Texas Code of Criminal Procedure specifically provides that, "[i]n a
prosecution for an offense with lesser included offenses, the jury may find the
defendant not guilty of the greater offense, but guilty of any lesser included offense." 
Tex. Code. Crim. Proc. Ann. art. 37.08 (Vernon 2006). Given that a grand jury
returned a true bill of indictment, accusing appellant of committing the offense of
manslaughter, and the State prosecuted appellant for committing that offense, the
petite jury necessarily had to first resolve the question of whether appellant was guilty
of committing the offense he was actually accused of committing, i.e., manslaughter,
before considering whether he was guilty of any lesser-included offense pursuant to
article 37.08. This reasoning is in accord with Boyett, in which the Texas Court of
Criminal Appeals expressly agreed with the defendant in that case that the pertinent
charge "should have more explicitly instructed the jurors that if they did not believe,
or if they had reasonable doubt of [the defendant's] guilt of the greater offense, they
should acquit [the defendant] and proceed to consider whether [the defendant] was
guilty of the lesser included offense." 692 S.W.2d at 515. 

We overrule appellant's first point of error.

Jury Argument

In his second point of error, appellant argues that the trial court erred in
overruling his objection to the State's "argument that a unanimous verdict of 'not
guilty' is required [for the greater offense of manslaughter] before the jury [could]
consider [the] lesser included offense" of criminally negligent homicide because "this
was a misstatement of the law" and left the jury "with the incorrect impression" that
the jury had to unanimously acquit appellant of the greater offense before it could
even consider the lesser-included offense. 

During the State's jury argument, the following exchange occurred:

[The State]: The only way you get to criminally negligent
homicide is if every single one of you says
"not guilty" on the manslaughter. That's the
only way you get there.


[Appellant's counsel]: Objection, Judge. That's not true.


[The trial court]: I'm sorry. That statement again[.]


[The State]: The only way they get to manslaughter is
if--or to criminally negligent homicide is if
they say "not guilty" of manslaughter.


[The trial court]: Your objection is overruled. The [c]ourt has
given the charge on the law.


[The State]: It's real simple. Criminally negligent
homicide is here (indicating). And the only
time you consider that is if every--all 12,
every single one of you, says, "No, not
guilty." So, you're not going to get there, so
I'm not going to get there, so I'm not going to
spend a lot of time talking about that because
that doesn't make sense. The reckless
driving. I'm not going to spend any time at
all talking about that because that's just
offensive. And I'm not going to talk about
that.


[Appellant's counsel]: Judge, I object to that. That's the law and the
jury's--was instructed to consider the charge.


[The trial court]: And the charge is given. If the [State]
chooses not to argue that, that's [its]
prerogative.


(Emphasis added).

 The crux of appellant's argument is that the State misstated the law as
contained in the jury charge. It is not error for the State to quote or paraphrase the
jury charge during argument. Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim. App.
1990). Having held that trial court did not err in instructing the jury to agree
unanimously to acquit appellant of manslaughter before considering whether
appellant was guilty of the lesser-included offense of criminally negligent homicide,
we further hold that the trial court did not err in overruling appellant's objection to
the State's jury argument.

We overrule appellant's second point of error.

Expert Witness

 In his third point of error, appellant argues that the trial court erred in
permitting Officer Martinez to testify as an expert witness on the issue of speed
because, even though the trial court had not ordered the State to disclose its expert
witnesses before trial, the State had voluntarily filed a document listing the expert
witnesses that it intended to call at trial and Martinez was not on the list. Appellant
asserts that, having filed a "formal document," the State had a duty to supplement the
list and "comply with the notice requirements" of the Texas Code of Criminal
Procedure. See Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2008).

 Before trial, appellant filed his "Motion to Disclose Experts." Although the
trial court did not rule on appellant's motion, the State subsequently filed its "Notice
of Intent to Call Witnesses at Trial Pursuant to Texas Rules of Evidence 702, 703, &
705." In its notice, the State listed two expert witnesses, Dr. Roger P. Milton, Jr.,
M.D., a medical examiner, and Ashlyn Rackley, a toxicologist. At trial, the State
presented Officer Martinez as an expert witness to testify as to his opinion of the
speed of appellant's car when it collided with the complainant based on Martinez's
measurements of the skid marks that appellant's car left at the scene of the incident. 
Appellant objected to the testimony on the ground that "he had not been given the 20-day notice required by" article 39.14, arguing that, because the State had voluntarily
disclosed an expert list, it had a duty to supplement the list. See id. § 39.14(b). The
trial court overruled the objection, expressly noting that article 39.14(b) requires a
trial court's ruling on a defendant's motion to disclose expert witnesses and that the
trial court had not ruled on appellant's motion. 

 Article 39.14 provides, in pertinent part,

On motion of a party and on notice to the other parties, the court in
which an action is pending may order one or more of the other parties
to disclose to the party making the motion the name and address of each
person the other party may use at trial to present evidence under Rules
702, 703, and 705, Texas Rules of Evidence. The court shall specify in
the order the time and manner in which the other party must make the
disclosure to the moving party, but in specifying the time in which the
other party shall make disclosure the court shall require the other party
to make the disclosure not later than the 20th day before the date the
trial begins. 


Tex. Code Crim. Proc. Ann. art. 39.14(b). Article 39.14(b) is not "self-executing." 
Tamez v. State, 205 S.W.3d 32, 39 (Tex. App.--Tyler 2006, no pet.); see Tex. Code
Crim. Proc. Ann. art. 39.14(b). Rather, article 39.14(b) "allows [a] trial court to
[order] the State to list [its] expert witnesses upon request," but, "[w]ithout such an
order, [any] complaint [is] not . . . preserved." Tamez, 205 S.W.3d at 39-40; see Tex.
Code Crim. Proc. Ann. art. 39.14(b).

 In support of his argument that he has preserved error for our review,
appellant relies upon Depena v. State, 148 S.W.3d 461 (Tex. App.--Corpus Christi
2004, no pet.). In Depena, the court concluded that the defendant had preserved
error, even though the trial court had not signed the defendant's pretrial discovery
motion to require the State to disclose its expert witnesses. Id. at 464-65. The court
noted that the State had filed a notice listing its expert witnesses "'in reply to [the]
[d]efendant's request of said notice.'" Id. at 464. It also noted that, when objecting
to the State's undisclosed, expert witness, the defendant asserted that the trial court
had in fact ordered the State to disclose its expert witnesses and neither the State nor
the trial court corrected the defendant's incorrect assertion. Id. Here, however, the
State did not file its notice "in reply" to appellant's request for notice and the trial
court expressly stated that it had not signed appellant's motion. 

 More importantly, in regard to appellant's specific complaint that "he had not
been given the 20-day notice required by" article 39.14, the simple fact remains that,
because he never obtained an order on his motion, appellant was not entitled to the
State's disclosure of expert witnesses not later than the 20th day before the trial began
pursuant to article 39.14. See Tex. Code Crim. Proc. Ann. art. 39.14. Accordingly,
we hold that the trial court did not err in allowing Officer Martinez to testify as an
expert witness on the issue of speed. See Lemasurier v. State, 91 S.W.3d 897,
900-01 (Tex. App.--Fort Worth 2002, pet. ref'd) (holding that expert witness
properly testified even though State did not include witness in its voluntarily filed
list).

 We overrule appellant's third point of error. 

Motion for Continuance

 In his fourth point of error, appellant argues that the trial court erred in denying
his oral motion for continuance based on his "surprise" regarding Officer Martinez's
expert testimony on speed because appellant needed to "obtain his own expert witness
to determine if [Martinez's] calculations were correct." 

 We note that the State, as a preliminary matter, argues that appellant did not
preserve error because appellant did not specifically state that he was requesting a
continuance, he orally moved for a continuance, and he did not obtain an adverse
ruling. However, it is apparent from the record that the trial court treated appellant's
request for "an opportunity to hire an expert" as a motion for continuance. Also, 
although the State correctly notes that, in Dewberry v. State, the Texas Court of
Criminal Appeals held that an oral motion for continuance preserves nothing for
appellate review, the court noted in a footnote that the defendant there had "fail[ed]
to cite [to the court] any authority for [his] request [that it use its equitable powers to
address the issue], and [it was] not aware of any such authority." 4 S.W.3d 735,
755-56 n.22 (Tex. Crim. App. 1999). Texas courts have used their "equitable power"
to address the issue when circumstances surrounding a trial court's denial of an oral
motion for continuance amounted to a denial of due process. See O'Rarden v. State,
777 S.W.2d 455, 459-60 (Tex. App.--Dallas 1989, pet. ref'd). In Williams v. State,
after "[a]ssuming there is [such] an equitable power," this Court addressed whether
the trial court's denial of the defendant's motion for continuance violated due process
as had been argued by the defendant. 196 S.W.3d 365, 367 (Tex. App.--Houston
[1st Dist.] 2006, pet. ref'd); see Petrick v. State, 832 S.W.2d 767, 770 (Tex.
App.--Houston [1st Dist.] 1992, pet. ref'd) (reasoning that, before Dewberry,
appellate courts had equitable power to review denial of oral motion for continuance
if denial violated due process). Moreover, the record reflects that appellant received
an adverse ruling on his motion for continuance. See McKinney v. State, 59 S.W.3d
304, 313 (Tex. App.--Fort Worth 2001, pet. ref'd) (noting motion for continuance
was implicitly overruled).

 Again, assuming that appellate courts have such an equitable power, we review 
the trial court's denial of appellant's oral motion for continuance for an abuse of
discretion. See O'Rarden, 777 S.W.2d at 459. Once a trial commences, a trial court
may only grant a continuance "when it is made to appear to the satisfaction of the
court that by some unexpected occurrence since the trial began, which no reasonable
diligence could have anticipated, the applicant is so taken by surprise that a fair trial
cannot be had." Tex. Code Crim. Proc. Ann. art. 29.13 (Vernon 2006).

 Here, the indictment alleged that appellant recklessly caused the complainant's
death by "driving [his] motor vehicle at an excessive rate of speed and failing to keep
a proper lookout." Thus, the trial court could have reasonably concluded that
appellant should have anticipated that (1) the State would attempt to prove that
appellant drove his car at an excessive rate of speed through the use of lay and/or
expert testimony and (2) appellant, unless he himself testified about his speed, would
probably need expert testimony to counter the State's evidence. See DuBose v. State,
977 S.W.2d 877, 881 (Tex. App.--Beaumont 1998, no pet.) (concluding that
defendant could have reasonably anticipated that State would call expert to testify on
disputed element of offense). Moreover, the actual scene measurements that Officer
Martinez relied upon in opining on appellant's rate of speed before colliding with the
complainant were readily available to appellant before trial. In regard to appellant's
specific complaint to the trial court that he needed an expert "to determine if
[Martinez's] calculations were correct," the trial court could have reasonably
concluded that because appellant already had this information before Martinez was
presented as an expert on speed, appellant should have made proper preparation,
including expert consultation, to address his concerns prior to the commencement of
the trial. Accordingly, we hold that the trial court did not abuse its discretion in
denying appellant's oral motion for continuance.

 We overrule appellant's fourth point of error.

Conclusion

We affirm the judgment of the trial court. 



Terry Jennings

Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.

En banc consideration was requested. See Tex. R. App. P. 41.2(c).

A majority of the Court voted for en banc consideration. See Tex. R. App. P. 49.7.

The En Banc Court consists of Chief Justice Radack and Justices Taft, Jennings,
Keyes, Alcala, Hanks, Higley, Bland, and Sharp.


Justice Jennings, writing for the majority of the En Banc Court, joined by Chief
Justice Radack and Justices Taft, Alcala, Hanks, and Bland.


Justice Taft, concurring to the en banc opinion, joined by Justice Alcala.


Justice Keyes, dissenting to the en banc opinion, joined by Justice Higley.


Justice Sharp, not participating.

Publish. Tex. R. App. P. 47.2(b). 

1. [1] See Tex. Penal Code Ann. § 19.04 (Vernon 2003).
2. 
[2] Barrett noted that the complainant had not consumed alcoholic beverages at the
nightclub.
3. 
[3] Sergeant Davis testified that the complainant wore a "[b]lack dress" and that the
area around the nightclub was "well lit."
4. 
[4] Houston Police Department Sergeant R. Stafford also testified that the area around
the nightclub was "well-li[t] from artificial streetlights that line[d] the street."
5. See Tex. Code Crim. Proc. Ann. art. 37.14 (Vernon 2006).
6. Similarly, here, the trial court also instructed the jury that,


If you find from the evidence beyond a reasonable doubt that the
defendant is guilty of either manslaughter on the one hand or criminally
negligent homicide on the other hand, but you have a reasonable doubt
as to which of said offenses he is guilty, then you must resolve that
doubt in the defendant's favor and find him guilty of the lesser offense
of criminally negligent homicide. 
7. We further disavow the portions of Barrios v. State, No. 01-07-00099-CR, 2008 WL
1747738 (Tex. App.--Houston [1st Dist.] Apr. 17, 2008, pet. granted) (mem. op., not
designated for publication); Rainey v. State, No. 01-06-01026-CR, 2008 WL 1747623 
(Tex. App.--Houston [1st Dist.] Apr. 17, 2008, pet. filed) (mem. op., not designated
for publication) ; and McAdams v. State, No. 01-07-000256-CR, 2008 WL 525736 
(Tex. App.--Houston [1st Dist.] Feb. 28, 2008, pet. filed) (mem. op., not designated
for publication) that conflict with our holding today.