**Kenneth Eugene HARRIS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–07–00391–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 22, 2009.

Rehearing Overruled June 9, 2009.

Allen C. Isbell, Houston, TX, for Appellant.

Dan McCrory, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and BLAND.

**EN BANC OPINION**

TERRY JENNINGS, Justice.

Under Texas Rule of Appellate Procedure 50, we withdraw our January 29, 2009 en banc opinion, substitute this opinion in its place, and vacate our January 29, 2009 judgment.

A jury found appellant, Kenneth Eugene Harris, guilty of the offense of manslaughter with a deadly weapon [1] and assessed his punishment at confinement for twenty years. In four points of error, appellant contends that the trial court erred in instructing the jury to unanimously agree to acquit him of the offense of manslaughter before considering whether he was guilty of the lesser-included offense of criminally negligent homicide, in overruling his objection to the State's argument that the jury must unanimously agree to acquit him of the offense of manslaughter before considering whether he was guilty of the lesser-included offense of criminally negligent homicide, in permitting an expert witness to testify when the State did not disclose the witness to him before trial, and in overruling his motion for continuance when the State's undisclosed, expert witness testified against him.

We affirm.

**Factual Background**

Brian Barrett, the boyfriend of the complainant, LaTonya Comeaux, testified that on July 10, 2005 at approximately 2:00 a.m., he and a group of five or six people left Mr. Gino's nightclub. Barrett's group decided to cross Cullen Boulevard, a four-lane road with a median in between the two northbound and two southbound lanes, in front of the nightclub, instead of walking to the nearest intersection, because they "were just following the crowd."

1. *See* TEX PENAL CODE ANN. § 19.04 (Vernon 2003).

Barrett and the complainant separately crossed the street in order to get to his car in a parking lot. He explained that, after the complainant had "just" stepped onto the curb,[2] a car, traveling "at least" forty miles per hour, collided with the complainant. After the car collided with the complainant, the driver of the car stopped for approximately "15 seconds" before leaving the scene. Emergency paramedics pronounced the complainant dead at the scene.

Keisha James testified that on July 10, 2005, after leaving the nightclub at approximately 1:50 a.m., she was riding as a front-seat passenger in another car when she suddenly heard a screeching noise for "[m]aybe a couple of seconds" to "five seconds" and a subsequent "boom." James turned around upon hearing the screeching and saw that a dark-colored Pontiac went up on the curb, striking the complainant on its front windshield, which caused the complainant to land in the street. When the Pontiac came off of the curb and back onto the street, the driver "was driving slowly[,] trying to avoid the [complainant] on the ground," and it "seemed" like the Pontiac ran over the complainant.

Being in the next lane over from the car, James saw that a "young[,] black male with a low cut" drove the car that had collided with the complainant. As the car passed James, she memorized the car's license plate number. After police officers arrived at the scene, James told them the license plate number of the car that had collided with the complainant. Two days after the collision, Houston Police Depart-

ment Sergeant A. Davis showed James a photographic array, and she identified appellant as the driver of the car that struck the complainant.

Houston Police Department Officer S. Martinez testified that he arrived on the scene approximately thirty minutes after the collision and immediately began reconstructing the accident and gathering evidence. Martinez opined that, given the approximately 225 feet of skid marks made by appellant's car at the scene, the car must have been traveling at approximately seventy-three miles per hour in a forty mile per hour speed zone before it struck the complainant. Martinez also noted that the "area was not well-lit," but "it was lit enough to where [a person] would have seen a pedestrian crossing the street." Martinez further added that it would have been "safest" for the complainant to have crossed the "four-lane" street at an intersection. Martinez stated that the complainant wore a "black and white" dress, which was primarily "white."[3]

Houston Police Department Officer T. Perrin testified that "lighting was not a factor" in causing the collision and it would not have been difficult for appellant to have seen the complainant crossing the street, even though the complainant wore dark clothing.

Houston Police Department Officer R. Gonzales testified that at the time of the collision, the weather was "cloudy," the road was "dry," and there was "a lot of artificial lighting" in the area.[4] Gonzales added that there was not a crosswalk for the nightclub's patrons to cross when go-

2. Barrett noted that the complainant had not consumed alcoholic beverages at the nightclub.

3. Sergeant Davis testified that the complainant wore a "[b]lack dress" and that the area around the nightclub was "well lit."

4. Houston Police Department Sergeant R. Stafford also testified that the area around the nightclub was "well-li[t] from artificial streetlights that line[d] the street."

ing to the parking lot and the nightclub was not near an intersection. Thus, Gonzales noted that it was likely that the complainant was not crossing at an intersection or crosswalk when the collision occurred.

Officer Gonzales further testified that on July 10, 2005, he was working at the nightclub. After the collision, witnesses informed Gonzales that a green-colored, Grand Prix Pontiac had struck the complainant. The witnesses also told him the license plate number of the car that had struck the complainant. By talking to people he knew in the nightclub and the local neighborhood, Gonzales "put the word out" of the description of the suspect's car. A few weeks later, Gonzales received a tip about a car which matched the description at 4611 Brinkley in Houston.

Houston Police Department Officer W. Wallace testified that he accompanied Officer Gonzales to 4611 Brinkley. When they arrived at the address, they immediately recognized that the car's license plate number matched the license plate number given to Gonzales by the witnesses to the collision. After removing a tarp from the front windshield, Wallace noticed that the front windshield was broken and there was blood, hair, and an earring inside of the car. Identigene Forensic DNA Analyst Jennifer Otto testified that the DNA from the blood and hair recovered from the car matched the complainant's DNA. After processing the car's information, Wallace learned that Ben Davis was the registered owner of the car.

Davis testified that, although the Grand Prix Pontiac car was registered under his name, he had sold the car to his cousin, appellant, in March of 2005. Davis and appellant agreed that appellant was to assume the car payments and, once appellant finished paying off the car, Davis would pass title to appellant. Davis verified that appellant lived at 4611 Brinkley.

## Jury Charge

■■■ In his first point of error, appellant argues that the trial court erred in instructing "the jury to agree unanimously to acquit appellant of manslaughter before it could consider whether [appellant] was guilty of the lesser included offense of criminally negligent homicide" because this "sequencing" instruction, also referred to by appellant as an "acquittal first" instruction, "results in undue restrictions and pressure on the jury," "encourages mistrials," and "impedes judicial economy." As the fundamental premise to his argument, appellant asserts that "[t]he law does not require that the jury unanimously agree that an accused is not guilty of a greater offense before they may consider a lesser offense."

In analyzing a jury-charge issue, our first duty is to decide if error exists. *Middleton v. State,* 125 S.W.3d 450, 453 (Tex. Crim.App.2003). Only if we find error, do we then analyze that error for harm. *Id.*

Appellant complains of the following provision of the trial court's jury charge: "Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, *you will acquit the defendant* of manslaughter and next consider whether the defendant is guilty of the lesser offense of criminally negligent homicide." (Emphasis added).

In *Boyett v. State,* the Texas Court of Criminal Appeals explained that when a jury is asked to consider lesser-included offenses in determining the guilt of a defendant, the jury charge should "explicitly" instruct jurors that if they do not believe, or if they have a reasonable doubt of a defendant's guilt of a greater offense, "they should acquit" the defendant of the

greater offense and then "proceed to consider whether [the defendant is] guilty of the lesser included offense." 692 S.W.2d 512, 515 (Tex.Crim.App.1985). Although appellant acknowledges that the Texas Court of Criminal Appeals in *Boyett* expressly approved of the "acquittal first" instruction that he complains of here, he contends that,

> The majority opinion [in *Boyett*] relied solely upon a form book sample jury charge for its holding that the jury charge should have instructed the jury to acquit the defendant of the greater offense before considering a lesser offense. The majority opinion did not explain why a unanimous agreement to acquit of a greater offense is required before the jury is allowed to consider guilt of a lesser included offense.

Appellant asserts that there is "no such requirement under Texas statutory or constitutional law," citing *Hutson v. State,* No. 03–99–00523–CR, 2000 WL 298675 (Tex. App.-Austin Mar. 23, 2000, pet. ref'd) (not designated for publication). In *Hutson,* the Third Court of Appeals, referring to article 37.14 of the Texas Code of Criminal Procedure,[5] opined that "Texas law contemplates [that] the courts may give juries free choice among greater and lesser-included offenses" as "options rather than a sequence of choices descending from the greatest offense"; "otherwise there would be no need for the statute establishing that conviction of a lesser-included offense implies acquittal of greater offenses." *Id.* at *1. Appellant concludes, therefore, that "a defendant is not harmed by the jury con-

sidering greater and lesser offenses as options, rather than sequential choices," but is harmed by the "acquittal first" instruction.

In addressing the same argument in a different case, this Court recently stated that the argument that the challenged instruction "required the jury to unanimously acquit him of the greater offense before it could consider the lesser offense is misguided." *Mitchel v. State,* 264 S.W.3d 244, 250 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd). This Court concluded that, although the instruction "requires post-acquittal consideration of a lesser offense," it "does not prohibit pre-acquittal consideration of a lesser offense." *Id.* This conclusion was based on the fact that the charge there also instructed the jury that if the jury believed beyond a reasonable doubt that the defendant was guilty of either the greater offense or the lesser-included offense, but had a reasonable doubt as to whether the defendant was guilty of the greater offense or the lesser-included offense, the jury had to " 'resolve that doubt in the defendant's favor and find him guilty of the lesser offense ....' "[6] *Id.*

Our reasoning in *Mitchel* was based upon the false assumption that the instruction allowing a jury to "resolve [ ] doubt in [a] defendant's favor and find him guilty of [a] lesser offense," is a required instruction. *Id.* However, nothing in the Code of Criminal Procedure or case law requires such an instruction. This Court, in *Mitchel,* also noted that another reason for "rejecting [the defendant's] premise that the challenged instruction required una-

---

**5.** *See* TEX. CODE CRIM. PROC ANN. art. 37.14 (Vernon 2006).

**6.** Similarly, here, the trial court also instructed the jury that,

> If you find from the evidence beyond a reasonable doubt that the defendant is guilty of either manslaughter on the one

hand or criminally negligent homicide on the other hand, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of criminally negligent homicide.

nimity regarding reasonable doubt before proceeding is that the only mention of unanimity occurred at the end of the jury charge regarding the foreman's certification duties once the jury had 'unanimously agreed upon a verdict.' " *Id.* However, this reasoning, as demonstrated below, fails to consider what the Code of Criminal Procedure and *Boyett* actually require.

Prior to *Mitchel,* this Court had previously assumed, without deciding, that the complained-of charge "required that the jury unanimously agree to acquit [the defendant] of the greater offense before it could consider the lesser offenses and that [such a] unanimity requirement was erroneous." *Campbell v. State,* 227 S.W.3d 326, 329 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Assuming error, we held that the defendant failed to show that he was harmed by the trial court's charge "even if that charge required the jury unanimously to acquit [the defendant] of the greater offense before it could consider a lesser-included offense." *Id.* at 332. Nevertheless, this Court noted that "it is not entirely clear that the complained-of charge language requires a unanimous acquittal of the greater offense before the jury may proceed to consider a lesser-included offense *or, for that matter, that such a unanimity requirement would be erroneous.*" *Id.* at 328 (emphasis added).

■ Today, we conclude that such a unanimity requirement is not erroneous and is, in fact, required by the Code of Criminal Procedure and *Boyett.* We expressly hold that the trial court did not err in instructing the jury to agree unanimously to acquit appellant of manslaughter be-fore determining whether appellant was guilty of the lesser-included offense of criminally negligent homicide. Accordingly, we overrule *Mitchel* to the extent that it conflicts with our holding today.[7]

In reaching our holding, we respectfully disagree with the Third Court of Appeals's statement that Texas law "contemplates" that trial courts should "give juries free choice among greater and lesser-included offenses" as "options rather than a sequence of choices descending from the greatest offense." *See Hutson,* 2000 WL 298675, at *1. Article 37.14 of the Texas Code of Criminal Procedure, upon which the Third Court of Appeals relied upon in drawing its conclusion, provides that if a defendant is indicted and tried for committing a higher offense, but the fact-finder finds him guilty only of a lesser-included offense, the verdict "shall be considered an acquittal of the higher offense." Tex. Code Crim. Proc. Ann. art. 37.14 (Vernon 2006). It does not logically follow that trial courts should give juries "free choice among greater and lesser-included offenses" as "options rather than a sequence of choices descending from the greatest offense." *See Hutson,* 2000 WL 298675, at *1.

Rather, because a unanimous finding of guilt on a lesser-included offense necessarily requires a unanimous acquittal on the higher offense, a defendant loses nothing to which he is entitled when a trial court utilizes a "sequencing" or "acquittal first" instruction. Article 37.14 says nothing about how a trial court is to instruct juries on lesser-included offenses. *See* Tex. Code Crim. Proc. Ann. art. 37.14. Contrary to

7. We further disavow the portions of *Barrios v. State,* No. 01-07-00099-CR, 2008 WL 1747738 (Tex.App.-Houston [1st Dist.] Apr. 17, 2008, pet. granted) (mem. op., not designated for publication); *Rainey v. State,* No. 01-06-01026-CR, 2008 WL 1747623 (Tex. App.-Houston [1st Dist.] Apr. 17, 2008, pet. filed) (mem. op., not designated for publication); and *McAdams v. State,* No. 01-07-000256-CR, 2008 WL 525736 (Tex.App.-Houston [1st Dist.] Feb. 28, 2008, pet. filed) (mem. op., not designated for publication) that conflict with our holding today.

appellant's assertion, it does not "contemplate" a "free choice" among conviction "options" in a jury charge as opposed to "sequential choices." *See id.*

The Texas Code of Criminal Procedure specifically provides that, "[i]n a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." TEX. CODE. CRIM. PROC. ANN. art. 37.08 (Vernon 2006). Given that a grand jury returned a true bill of indictment, accusing appellant of committing the offense of manslaughter, and the State prosecuted appellant for committing that offense, the petite jury necessarily had to first resolve the question of whether appellant was guilty of committing the offense he was actually accused of committing, i.e., manslaughter, before considering whether he was guilty of any lesser-included offense pursuant to article 37.08. This reasoning is in accord with *Boyett,* in which the Texas Court of Criminal Appeals expressly agreed with the defendant in that case that the pertinent charge "should have more explicitly instructed the jurors that if they did not believe, or if they had reasonable doubt of [the defendant's] guilt of the greater offense, they should acquit [the defendant] and proceed to consider whether [the defendant] was guilty of the lesser included offense." 692 S.W.2d at 515.

We overrule appellant's first point of error.

### Jury Argument

In his second point of error, appellant argues that the trial court erred in overruling his objection to the State's "argument that a unanimous verdict of 'not guilty' is required [for the greater offense of manslaughter] before the jury [could] consider [the] lesser included offense" of criminally negligent homicide because

"this was a misstatement of the law" and left the jury "with the incorrect impression" that the jury had to unanimously acquit appellant of the greater offense before it could even consider the lesser-included offense.

During the State's jury argument, the following exchange occurred:

[The State]: The only way you get to criminally negligent homicide *is if every single one of you says "not guilty" on the manslaughter.* That's the only way you get there.

[Appellant's counsel]: Objection, Judge. That's not true.

[The trial court]: I'm sorry. That statement again[.]

[The State]: The only way they get to manslaughter is if—or to criminally negligent homicide is if they say "not guilty" of manslaughter.

[The trial court]: Your objection is overruled. The [c]ourt has given the charge on the law.

[The State]: It's real simple. Criminally negligent homicide is here (indicating). And the only time you consider that is if every—all 12, every single one of you, says, "No, not guilty." So, you're not going to get there, so I'm not going to get there, so I'm not going to spend a lot of time talking about that because that doesn't make sense. The reckless driving. I'm not going to spend any time at all talking about that because that's just offensive. And I'm not going to talk about that.

[Appellant's counsel]: Judge, I object to that. That's the law and the jury's— was instructed to consider the charge.

[The trial court]: And the charge is given. If the [State] chooses not to argue that, that's [its] prerogative.

(Emphasis added).

█ The crux of appellant's argument is that the State misstated the law as con-

tained in the jury charge. It is not error for the State to quote or paraphrase the jury charge during argument. *Whiting v. State*, 797 S.W.2d 45, 48 (Tex.Crim.App. 1990). Having held that trial court did not err in instructing the jury to agree unanimously to acquit appellant of manslaughter before considering whether appellant was guilty of the lesser-included offense of criminally negligent homicide, we further hold that the trial court did not err in overruling appellant's objection to the State's jury argument.

We overrule appellant's second point of error.

### Expert Witness

■ In his third point of error, appellant argues that the trial court erred in permitting Officer Martinez to testify as an expert witness on the issue of speed because, even though the trial court had not ordered the State to disclose its expert witnesses before trial, the State had voluntarily filed a document listing the expert witnesses that it intended to call at trial and Martinez was not on the list. Appellant asserts that, having filed a "formal document," the State had a duty to supplement the list and "comply with the notice requirements" of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp. 2008).

Before trial, appellant filed his "Motion to Disclose Experts." Although the trial court did not rule on appellant's motion, the State subsequently filed its "Notice of Intent to Call Witnesses at Trial Pursuant to Texas Rules of Evidence 702, 703, & 705." In its notice, the State listed two expert witnesses, Dr. Roger P. Milton, Jr., M.D., a medical examiner, and Ashlyn Rackley, a toxicologist. At trial, the State presented Officer Martinez as an expert witness to testify as to his opinion of the speed of appellant's car when it collided with the complainant based on Martinez's measurements of the skid marks that appellant's car left at the scene of the incident. Appellant objected to the testimony on the ground that "he had not been given the 20–day notice required by" article 39.14, arguing that, because the State had voluntarily disclosed an expert list, it had a duty to supplement the list. *See id.* § 39.14(b). The trial court overruled the objection, expressly noting that article 39.14(b) requires a trial court's ruling on a defendant's motion to disclose expert witnesses and that the trial court had not ruled on appellant's motion.

■ Article 39.14 provides, in pertinent part,

> On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date the trial begins.

TEX. CODE CRIM. PROC. ANN. art. 39.14(b). Article 39.14(b) is not "self-executing." *Tamez v. State*, 205 S.W.3d 32, 39 (Tex. App.-Tyler 2006, no pet.); *see* TEX. CODE CRIM. PROC. ANN. art. 39.14(b). Rather, article 39.14(b) "allows [a] trial court to [order] the State to list [its] expert witnesses upon request," but, "[w]ithout such an order, [any] complaint [is] not ... preserved." *Tamez*, 205 S.W.3d at 39–40; *see* TEX. CODE CRIM. PROC. ANN. art. 39.14(b).

In support of his argument that he has preserved error for our review, appellant relies upon *Depena v. State*, 148 S.W.3d 461 (Tex.App.-Corpus Christi 2004, no pet.). In *Depena*, the court concluded that the defendant had preserved error, even though the trial court had not signed the defendant's pretrial discovery motion to require the State to disclose its expert witnesses. *Id.* at 464–65. The court noted that the State had filed a notice listing its expert witnesses " 'in reply to [the][d]efendant's request of said notice.' " *Id.* at 464. It also noted that, when objecting to the State's undisclosed, expert witness, the defendant asserted that the trial court had in fact ordered the State to disclose its expert witnesses and neither the State nor the trial court corrected the defendant's incorrect assertion. *Id.* Here, however, the State did not file its notice "in reply" to appellant's request for notice and the trial court expressly stated that it had not signed appellant's motion.

More importantly, in regard to appellant's specific complaint that "he had not been given the 20–day notice required by" article 39.14, the simple fact remains that, because he never obtained an order on his motion, appellant was not entitled to the State's disclosure of expert witnesses not later than the 20th day before the trial began pursuant to article 39.14. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14. Accordingly, we hold that the trial court did not err in allowing Officer Martinez to testify as an expert witness on the issue of speed. *See Lemasurier v. State*, 91 S.W.3d 897, 900–01 (Tex.App.-Fort Worth 2002, pet. ref'd) (holding that expert witness properly testified even though State did not include witness in its voluntarily filed list).

We overrule appellant's third point of error.

## Motion for Continuance

█ In his fourth point of error, appellant argues that the trial court erred in denying his oral motion for continuance based on his "surprise" regarding Officer Martinez's expert testimony on speed because appellant needed to "obtain his own expert witness to determine if [Martinez's] calculations were correct."

█ We note that the State, as a preliminary matter, argues that appellant did not preserve error because appellant did not specifically state that he was requesting a continuance, he orally moved for a continuance, and he did not obtain an adverse ruling. However, it is apparent from the record that the trial court treated appellant's request for "an opportunity to hire an expert" as a motion for continuance. Also, although the State correctly notes that, in *Dewberry v. State*, the Texas Court of Criminal Appeals held that an oral motion for continuance preserves nothing for appellate review, the court noted in a footnote that the defendant there had "fail[ed] to cite [to the court] any authority for [his] request [that it use its equitable powers to address the issue], and [it was] not aware of any such authority." 4 S.W.3d 735, 755–56 n. 22 (Tex.Crim.App. 1999). Texas courts have used their "equitable power" to address the issue when circumstances surrounding a trial court's denial of an oral motion for continuance amounted to a denial of due process. *See O'Rarden v. State*, 777 S.W.2d 455, 459–60 (Tex.App.-Dallas 1989, pet. ref'd). In *Williams v. State*, after "[a]ssuming there is [such] an equitable power," this Court addressed whether the trial court's denial of the defendant's motion for continuance violated due process as had been argued by the defendant. 196 S.W.3d 365, 367 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd); *see Petrick v. State*, 832 S.W.2d 767, 770 (Tex.App.-Houston [1st Dist.]

1992, pet. ref'd) (reasoning that, before *Dewberry,* appellate courts had equitable power to review denial of oral motion for continuance if denial violated due process). Moreover, the record reflects that appellant received an adverse ruling on his motion for continuance. *See McKinney v. State,* 59 S.W.3d 304, 313 (Tex.App.-Fort Worth 2001, pet. ref'd) (noting motion for continuance was implicitly overruled).

■ Again, assuming that appellate courts have such an equitable power, we review the trial court's denial of appellant's oral motion for continuance for an abuse of discretion. *See O'Rarden,* 777 S.W.2d at 459. Once a trial commences, a trial court may only grant a continuance "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had." Tex. Code Crim. Proc. Ann. art. 29.13 (Vernon 2006).

Here, the indictment alleged that appellant recklessly caused the complainant's death by "driving [his] motor vehicle at an excessive rate of speed and failing to keep a proper lookout." Thus, the trial court could have reasonably concluded that appellant should have anticipated that (1) the State would attempt to prove that appellant drove his car at an excessive rate of speed through the use of lay and/or expert testimony and (2) appellant, unless he himself testified about his speed, would probably need expert testimony to counter the State's evidence. *See DuBose v. State,* 977 S.W.2d 877, 881 (Tex.App.-Beaumont 1998, no pet.) (concluding that defendant could have reasonably anticipated that State would call expert to testify on disputed element of offense). Moreover, the actual scene measurements that Officer Martinez relied upon in opining on appellant's rate of speed before colliding with the complainant were readily available to appellant before trial. In regard to appellant's specific complaint to the trial court that he needed an expert "to determine if [Martinez's] calculations were correct," the trial court could have reasonably concluded that because appellant already had this information before Martinez was presented as an expert on speed, appellant should have made proper preparation, including expert consultation, to address his concerns prior to the commencement of the trial. Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's oral motion for continuance.

We overrule appellant's fourth point of error.

## Conclusion

We affirm the judgment of the trial court.

En banc consideration was requested. *See* Tex. R. App. P. 41.2(c).

A majority of the Court voted for en banc consideration. *See* Tex. R. App. P. 49.7.

The En Banc Court consists of Chief Justice RADACK and Justices TAFT, JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, BLAND, and SHARP.

Justice JENNINGS, writing for the majority of the En Banc Court, joined by Chief Justice RADACK and Justices TAFT, ALCALA, HANKS, and BLAND.

Justice TAFT, concurring to the en banc opinion, joined by Justice ALCALA.

Justice KEYES, dissenting to the en banc opinion, joined by Justice HIGLEY.

Justice SHARP, not participating.

TIM TAFT, Justice, concurring.

I join the opinion of Justice Jennings, but I write this concurring opinion to further note a couple of matters.

In *Boyett v. State,* the Texas Court of Criminal Appeals explained that, when a jury is asked to consider lesser-included offenses in determining the guilt of a defendant, the jury charge should "explicitly" instruct jurors that if they do not believe, or if they have a reasonable doubt of a defendant's guilt of a greater offense, "they should acquit" the defendant of the greater offense and then "proceed to consider whether [the defendant is] guilty of the lesser included offense." 692 S.W.2d 512, 515 (Tex.Crim.App.1985). Although appellant acknowledges that the source of the instruction in question is the Texas Court of Criminal Appeals opinion in *Boyett,* he contends that

> The majority opinion [in *Boyett* ] relied solely upon a form book sample jury charge for its holding that the jury charge should have instructed the jury to acquit the defendant of the greater offense before considering a lesser offense. The majority opinion did not explain why a unanimous agreement to acquit of a greater offense is required before the jury is allowed to consider guilt of a lesser included offense.

Of course, the Court of Criminal Appeals had no reason to address the controversy regarding "unanimity" that arose more than a decade after its *Boyett* opinion. *See Hutson v. State,* No. 03–99–00523–CR, 2000 WL 298675 (Tex.App.-Austin Mar. 23, 2000, pet. ref'd) (not designated for publication) (finding no requirement of unanimity).

This Court has been presented with the unanimity controversy in several cases. Initially, we found it unnecessary to resolve the controversy because even assuming the instruction required unanimity and

that such was error, we held that any error was harmless. *See Campbell v. State,* 227 S.W.3d 326, 332 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Subsequently, this Court has held that the instruction is not erroneous because it does not require unanimity. *See Mitchel v. State,* 264 S.W.3d 244, 250 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd). We have followed *Mitchel* in a couple of unpublished opinions. *See Barrios v. State,* No. 01–07–00099–CR, 2008 WL 1747738, at *2 (Tex.App.-Houston [1st Dist.] Apr. 17, 2008, pet. granted) (mem. op., not designated for publication); *Rainey v. State,* No. 01–06–01026–CR, 2008 WL 1747623, at *2 (Tex.App.-Houston [1st Dist.] Apr. 17, 2008, pet. filed) (mem. op., not designated for publication). Although the Court of Criminal Appeals refused review in *Mitchel* it granted review in *Barrios.*

I acknowledge that there are reasonable arguments on both sides of the unanimity controversy. In *Mitchel,* we relied primarily on the existence of another instruction that presumed the jurors were considering whether to convict of the greater or lesser offense, in which case they should resolve any doubt by finding the defendant guilty of the lesser offense. *See Mitchel,* 264 S.W.3d at 250. The practicality of avoiding mistrials when a jury cannot unanimously find the defendant not guilty of the greater before considering the lesser, as illustrated by the *Hutson* case, further supports our former holding in *Mitchel.*

In *Campbell,* we pointed out a couple of considerations that cut each way. For example, the word unanimously does not appear in the complained of instruction, but only in the boilerplate in regard to the foreman's duty to certify the verdict unanimously agreed upon. *See Campbell,* 227 S.W.3d at 328. We noted that the verdict form provided four equal choices (not

guilty of any offense, guilty of the greater offense, and guilty of either of the two lesser offenses). *See id.* at 329. The absence of a verdict form for not guilty of the greater offense also tends to support non-unanimity. We also mentioned the *Hutson* opinion from the Third Court of Appeals. *Id.*

Supporting unanimity, we observed in *Campbell* that the language of the instruction itself in which the pronoun "you" is used in place of "members of the jury," implying that only if all jurors had a reasonable doubt of guilt as to the greater, should they go on to consider the first lesser offense. *Id.* at 329 & n. 1. Within the harmless error analysis in *Campbell*, we also observed the well-established principle that any error in the instructions regarding the lesser offenses is not reversible because the jury is presumed to have stopped deliberating after having found the defendant guilty of the greater offense. *Id.* at 330. Closely related to this last consideration is the observation that one reads a document starting from the top of the first page. One who begins reading the charge in the present case, for example, will read through some introductory language, some definitions, and then come to the application paragraph for the greater offense. The application paragraph instructs the jurors in plain language that if they believe beyond a reasonable doubt that the defendant is guilty of the greater offense, then they will find the defendant guilty of that offense. No one questions that the finding of guilt beyond a reasonable doubt as to the charged offense must be a unanimous decision, even though the application paragraph does not expressly say so.

Then comes the instruction in question:

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of manslaughter and next consider whether the defendant is guilty of the lesser offense of criminally negligent homicide.

In accord with the mandate from *Boyett* and consistent with the plain language of the context, I would also hold that this instruction requires the jury to unanimously acquit the defendant before proceeding to consider appellant's guilt of a lesser included offense. Such a holding not only is true to the mandate of the Court of Criminal Appeals and the plain language of the jury charge, it is also in accord with the policy consideration that the State, which brought the original charge against the defendant, is entitled to a verdict on that charge. Of course, a verdict in a criminal case must be unanimous.

That leaves the question of what to do with the instruction upon which we relied in *Mitchel:*

If you find from the evidence beyond a reasonable doubt that the defendant is guilty of either manslaughter on the one hand or criminally negligent homicide on the other hand, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of criminally negligent homicide.

I would hold that this instruction is inherently confusing and should not be submitted to the jury. If the jury had unanimously found beyond a reasonable doubt that the defendant was guilty of the greater offense, it should have proceeded to the verdict page and indicated it had found the defendant guilty of the greater offense. If the jury unanimously did not so find, then it should have acquitted the defendant of the greater offense and gone on to consider a lesser-included offense. In either case, the jury will never be in a position of having to choose between the greater and

the lesser, wondering of which the defendant is guilty beyond a reasonable doubt.

For these reasons, I agree that the jury instruction in question is not erroneous, I agree that it requires unanimity, and I concur in the overruling of appellant's first point.

EVELYN V. KEYES, Justice, dissenting on en banc review.

I respectfully dissent. In this case, a jury found appellant, Kenneth Eugene Harris, guilty of the offense of manslaughter with a deadly weapon[1] and assessed his punishment at confinement for 20 years. In his first and second points of error, appellant contends the trial court erred (1) in instructing the jury to agree unanimously to acquit him of the offense of manslaughter before considering whether he was guilty of the lesser-included offense of criminally negligent homicide and (2) in overruling his objection to the State's argument that the jury must unanimously agree to acquit him of manslaughter before considering whether he was guilty of criminally negligent homicide.

Without engaging in the analysis of the language of the charge articulated by this Court in its previous published decisions on this point, *Mitchel v. State*, 264 S.W.3d 244, 249–51 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd), and *Campbell v. State*, 227 S.W.3d 326, 328–29 (Tex.App.-Houston [1st Dist.] 2007, no pet.), the majority overrules *Mitchel*, stating, "[W]e expressly hold that the trial court did not err in instructing the jury to agree unanimously

to acquit appellant of manslaughter before determining whether appellant was guilty of the lesser-included offense of criminally negligent homicide" and that (2) "the trial court did not err in overruling appellant's objection to the State's jury argument" because the State correctly stated the law. *Harris v. State*, 287 S.W.3d at 790, 791 (Tex.App.-Houston [1st Dist.] 2009, no pet. h.).

Because I believe the majority's construction of the charge is contrary to the controlling case, *Boyett v. State*, 692 S.W.2d 512, 515 (Tex.Crim.App.1985), and because the majority overrules *Mitchel* and its progeny,[2] with which I agree, and because I believe the majority's insertion of a unanimity requirement at the beginning of the charge violates the rules of construction and has the consequence of depriving defendants of the substantial right to have lesser included offenses considered in cases of reasonable doubt before a verdict of guilty or acquittal is reached, I respectfully dissent.

I would hold that the charge, read in accordance with controlling law, does *not* require that *the jurors must agree unanimously to acquit* a defendant of the greater offense before they can consider the lesser; rather, it provides that *unless the jurors agree unanimously to convict* the defendant of the greater offense, or if any of them have a reasonable doubt about convicting him of the greater offense, they should consider the lesser offense, and they must prefer the lesser offense if any of them continue to have a reasonable

---

1. *See* Tex. Penal Code Ann. § 19.04 (Vernon 2003).

2. This Court has issued three memorandum opinions following *Mitchel v. State*, 264 S.W.3d 244 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd): *Barrios v. State*, No. 07–00099–CR, 2008 WL 1747738 (Tex.App.-Houston [1st Dist.] Sept. 10, 2008, pet. grant-ed) (mem. op.); *Rainey v. State*, No. 06–01026–CR, 2008 WL 1747623 (Tex.App.-Houston [1st Dist.] Apr. 17, 2008, pet. filed) (mem. op.); and *McAdams v. State*, No. 07–00256–CR, 2008 WL 525736 (Tex.App.-Houston [1st Dist.] Feb. 28, 2008, pet. filed) (mem. op.).

doubt as to whether he is guilty of the greater. I would also hold that the State misstated the law in its jury argument, that the trial court erred in permitting that argument over appellant's objection, and that appellant was harmed thereby. I would, therefore, reverse and remand the case for a new trial.

## Facts

The jury charge at issue stated in pertinent part:

> Now, *if you find from the evidence beyond a reasonable doubt that* on or about the 10th day of July, 2005, in Harris County, Texas, *the defendant,* Kenneth Eugene Harris, *did then and there unlawfully, recklessly cause the death of [the complainant]* by striking [her] with the motor vehicle while driving the motor vehicle at an excessive rate of speed and failing to keep a proper lookout, *then you will find the defendant guilty of manslaughter,* as charged in the indictment.
>
> *Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of manslaughter and next consider whether the defendant is guilty of the lesser offense of criminally negligent homicide.*
>
> . . . .
>
> Therefore, if you find from the evidence beyond a reasonable doubt that on or about the 10th day of July, 2005, . . . the defendant . . . did then and there unlawfully, with criminal negligence cause the death of [the complainant] by striking [her] with the motor vehicle while driving the motor vehicle at an excessive rate of speed and failing to keep a proper lookout, then you will find the defendant guilty of criminally negligent homicide.
>
> . . . .

> *If you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge then you will acquit the defendant and say by your verdict "Not Guilty."*
>
> . . . .
>
> After you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside at your deliberations, vote with you, and *when you have unanimously agreed upon a verdict,* to *certify to your verdict* by using the appropriate form attached hereto and signing the same as Foreman.
>
> . . . .
>
> Following the arguments of counsel, you will retire to consider your verdict.

(Emphasis added).

During the State's jury argument, the following exchange occurred:

> [State]: *The only way you get to criminally negligent homicide is if every single one of you says "not guilty" on the manslaughter. That's the only way you get there.*
>
> [Appellant's counsel]: *Objection, Judge. That's not true.*
>
> [Court]: I'm sorry. That statement again[.]
>
> [State]: The only way they get to manslaughter is if—or to criminally negligent homicide is if they say "not guilty" of manslaughter.
>
> [Court]: *Your objection is overruled. The [c]ourt has given the charge on the law.*
>
> [State]: *It's real simple. Criminally negligent homicide is here (indicating). And the only time you consider that is if every—all 12, every single one of you, says, "No, not guilty." So, you're not going to get there, so I'm not going to get there, so I'm not*

*going to spend a lot of time talking about that because that doesn't make sense.* The reckless driving. I'm not going to spend any time at all talking about that because that's just offensive. And I'm not going to talk about that.

[Appellant's counsel]: *Judge, I object to that.* That's the law and the jury's— was instructed to consider the charge.

[Court]: *And the charge is given. If the [State] chooses not to argue that, that's [its] prerogative.*

(Emphasis added).

### Jury Charge

In his first point of error, appellant argues that the trial court "erroneously instructed the jury that it could not consider the lesser included offense of criminally negligent homicide, unless and until the jury acquitted appellant of manslaughter." Appellant contends that "[t]he law does not require that the jury unanimously agree that an accused is not guilty of a greater offense before they may consider a lesser offense." I agree with appellant's statement of Texas law, but I disagree with appellant's further statement that the instruction given to the jury as *written*— rather than as *construed* by the State in its jury argument—instructed them incorrectly.

I would hold that the jury instruction as written is a correct statement of Texas law as stated in the controlling cases—*Boyett* and *Mitchel.* The majority, however, conclusorily overrules *Mitchel* on two grounds. First, the majority opines that Article 37.14 of the Code of Criminal Procedure, which provides that if a defendant is found guilty of a lesser-included offense the verdict "shall be considered an acquittal of the higher offense," "says nothing about how a trial court is to instruct juries on lesser-included offenses." TEX. CODE

CRIM. PROC. ANN. art. 37.14 (Vernon 2006); *Harris,* 287 S.W.3d at 790. Second, the majority opines that its construction "is in accord with *Boyett,*" in which the Texas Court of Criminal Appeals expressly agreed with the defendant in that case that the pertinent charge "should have more explicitly instructed the jurors that if they did not believe, or if they had reasonable doubt of [the defendant's] guilt of the greater offense, they would acquit [the defendant] and proceed to consider whether [the defendant] was guilty of the lesser included offense." *Id.* at 791 (quoting *Boyett,* 692 S.W.2d at 515). I disagree both with the claim that the Code of Criminal Procedure is silent as to the requirements of a proper instruction on lesser-included offenses and with the claim that the majority has correctly construed *Boyett.*

The majority construes the sentence quoted from *Boyett* as instructing jurors that if they have a reasonable doubt as to whether the defendant is guilty of a greater offense they must unanimously acquit him of the greater offense and, only if they are unanimous as to acquittal, then they "proceed to consider" the next lesser offense. I disagree that there is such an instruction in *Boyett.*

In *Boyett,* which this Court previously analyzed in *Mitchel,* the issue was whether there should have been a sequencing charge, such as that at issue in this case. *See Mitchel,* 264 S.W.3d at 249–50 (analyzing *Boyett* ). The charge complained of applied Texas law to the facts for murder, voluntary manslaughter, and involuntary manslaughter, and then stated, "Unless you so find, or if you have reasonable doubt thereof, you should consider whether or not the defendant is guilty of the lesser included offense of [offense named]." *Boyett,* 692 S.W.2d at 515. The appellant in *Boyett* argued that the charge

"amounts to an instruction to convict because it does not instruct the jury to acquit Appellant of a greater offense before considering his guilt of a lesser offense nor does it instruct the Jury to acquit if it has a reasonable doubt as to whether Appellant is guilty of any offense therein defined." *Id.* The appellant sought an instruction that is essentially identical to the one given in this case, namely an instruction that would say:

> [I]f you do not so believe, [the defendant is guilty of the greater offense] or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'not guilty' but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of [the greater offense] and proceed to consider whether the defendant is guilty of the [lesser offense].

*Id.*

The Court of Criminal Appeals agreed with the appellant in *Boyett* that the charge "should have more explicitly instructed the jurors that if they did not believe, or if they had reasonable doubt of appellant's guilt of the greater offense, they should *acquit appellant and proceed* to consider whether appellant was guilty of the lesser included offense." *Id.* (emphasis added). But the Court of Criminal Appeals imposed no unanimity requirement on the jurors' acquittal of the greater offense *before* proceeding to the lesser. Instead, it held that the instruction as given had the *same effect* as the instruction sought, namely, when read as a whole, it directed the jurors to consider the offenses in sequence unless they were unanimous that the defendant was guilty of a greater offense beyond a reasonable doubt; it did not direct them not to proceed to consider lesser offenses unless they were unanimous that the defendant should be acquitted of a greater offense:

[T]he instruction given, although not a model charge, essentially instructed the jurors to acquit, without specifically using the word 'acquit,' by stating that if the jurors had a reasonable doubt as to the guilt of appellant to the greater offense, they should next consider the lesser included offense. *This instruction properly informed the jurors to consider appellant's requested instructions on lesser included offenses.* The jury apparently understood the instructions correctly since they found appellant guilty of the lesser included offense of voluntary manslaughter, thus acquitting him of murder. The charge read as a whole adequately instructed the jurors about acquitting appellant and about considering the lesser included offenses requested by appellant.

The second part of appellant's contention is that the charge does not instruct the jury to acquit if it has a reasonable doubt as to whether appellant is guilty of any offense. *The last page of the charge instructs the jurors, "In case you have a reasonable doubt as to defendant's guilt after considering all the evidence before you and these instructions, you will acquit him." The better practice is to instruct the jury that if it has a reasonable doubt as to whether a defendant is guilty of any offense defined in the charge, it will find the defendant not guilty and the better location for such an instruction is after the last lesser included offense in the charge. However, we hold that the instruction given is, in essence, the same as that appellant now contends should have been given and the charge when read as a whole adequately instructs the jury on this issue.*

*Id.* at 516 (emphasis added).

The Court of Criminal Appeals thus construed the correct charge as one that di-

rected the jurors to read the charge as a whole and, if they had a reasonable doubt of the defendant's guilt of the greater offense, not to convict the defendant of that greater offense but to consider whether he was guilty of a lesser offense and, *at the end of considering all of the lesser included offenses*, to acquit the defendant of a greater offense by finding him guilty of a lesser or acquitting him of all charges, just as Article 37.14 of the Code of Criminal Procedure requires. *See* TEX. CODE CRIM. PROC. ANN. art. 37.14 (providing that guilty verdict on lesser-included offense "shall be considered an acquittal of the higher offense").

The charge at issue in this Court's *Mitchel* case adopted the charge language suggested by the defense in *Boyett* and approved by the Court of Criminal Appeals in *Boyett*. *See Mitchel*, 264 S.W.3d at 249. This Court held,

> The charge instructed jurors that having a reasonable doubt of appellant's guilt of the greater offense amounted to an acquittal of that offense and required that jurors consider the lesser offenses. The charge then required that, if the jurors had a reasonable doubt as to whether appellant was guilty of the greater offense or the lesser included offense, the jurors must resolve any doubt by finding appellant guilty of the lesser offense. When read together, these two instructions properly instructed jurors regarding the effect of their having had a reasonable doubt as to any charged offense.

*Id.* at 250.

As in *Mitchel*, the charge at issue in the instant case incorporates the language sought by the defense in *Boyett* and construed by the Court of Criminal Appeals in *Boyett* as directing the jury to consider the charge as a whole and to determine guilt *after* considering both the greater and the lesser offenses, determining acquittal of a greater offense by conviction of a lesser or acquittal of all charges in the verdict. As this Court previously observed in both *Campbell* and *Mitchel*, the only mention of unanimity occurs at the end of the jury charge regarding the foreman's certification duties once the jury has "unanimously agreed upon a verdict," and it applies only after the jurors have gone through the entire sequence of offenses with which the defendant was charged and have acquitted him of the greater charges (if they do) by convicting him of a lesser or acquitting him of all charges. *See Mitchel*, 264 S.W.3d at 250; *Campbell*, 227 S.W.3d at 328–29; *see also Boyett*, 692 S.W.2d at 516 (preferring as "[t]he better practice" in cases when the jury "has a reasonable doubt as to whether a defendant is guilty of any offense defined in the charge" to locate the instruction that the jury find the defendant "not guilty . . . after the last lesser included offense in the charge"). Moreover, just as in *Mitchel* and *Boyett*, there is no indication in the text of the challenged instruction that unanimity is required on any offense prior to the delivery of the verdict, and the charge makes sense as a whole only if it is read as instructing the jurors to consider each charged offense in sequence, unless they unanimously agree to *convict* the defendant of a greater offense before reaching a lesser.[3]

---

3. Nevertheless, as stated by the Court of Criminal Appeals of the predecessor charge in *Boyett*, more felicitous charge language could have been chosen. *See Boyett*, 692 S.W.2d at 516. The charge would be clearer and more coherent in conveying the same idea if it

stated, "[If you unanimously find the defendant guilty of the greater offense, you will proceed directly to the verdict page and convict the defendant of the greater offense. If you do not unanimously find the defendant guilty of the greater offense], or if you have a

The majority, however, rather than reading the charge as a whole as requiring a jury in doubt as to a greater offense to consider lesser included offenses before reaching their unanimous verdict of guilt or acquittal, interprets the instruction as *prohibiting* the jury from considering a lesser offense if they have a reasonable doubt about convicting the defendant of the greater offense except in the special case where *all* jurors have such a doubt. Thus, in virtually all cases, it *precludes* consideration of the charge as a whole, comparison of the greater and lesser offenses, and acquittal of a greater offense by conviction of a lesser. The jury must either all agree to convict the defendant of the greater offense or all agree to acquit before even considering the rest of the charge. The majority's reading of the charge thus transposes an instruction addressed to the situation in which jurors *do not agree unanimously to convict* the defendant of the greater offense or have a reasonable doubt, and are, therefore, instructed to proceed to consider the lesser offense, with an instruction requiring that jurors *must agree unanimously to acquit* of the greater offense in order to reach the lesser. The jurors are stuck, by the majority's reading, with "all or nothing," and the part of the charge directing them to consider the next lesser offenses in sequence becomes irrelevant in all cases except those in which every juror agrees that the defendant is not guilty of the greater offense. There is no room for a non-unanimous jury or a reasonable doubt in this interpretation of the charge. The result is a reading that turns the construction of

the charge required by *Boyett* and *Mitchel* on its head.

Not only does the majority's reading of the charge contravene *Boyett,* it also contravenes the rules of construction. Lesser included offenses are governed by articles 37.08 and 37.09 of the Texas Code of Criminal Procedure, as well as article 37.14. TEX. CODE CRIM. PROC. ANN. arts. 37.08, 37.09, 37.14 (Vernon 2006). Article 3.01 of the Code of Criminal Procedure provides, "All words, phrases and terms in this Code are to be taken and understood in their usual acceptance in common language, except where specially defined." TEX. CODE CRIM. PROC. ANN. art. 3.01 (Vernon 2005). In addition, article 1.27 of the Code provides, "If this Code fails to provide a rule of procedure in a particular state of a case which may arise, the rules of the common law shall be applied and govern." *Id.* art. 1.27.

The leading case governing the interpretation of text in the criminal context is *Boykin v. State.* 818 S.W.2d 782 (Tex. Crim.App.1991). *Boykin* is a statutory construction case, but, as the court stated, "It should be remembered that the canons of construction are no more than rules of logic for the interpretation of texts." *Id.* at 785 n. 3. The rules of construction in criminal cases thus apply to the text of criminal jury charges, as well as to the texts of the statutes under which they are promulgated. Under *Boykin,* the Court of Criminal Appeals gives primary effect to the plain meaning of a text. *Id.* at 785. Only when the plain meaning would lead to absurd consequences is the language not applied literally. *Id.* The persuasiveness

---

reasonable doubt thereof, you will [not convict] the defendant of [the greater offense] [but] will next consider whether the defendant is guilty of the lesser offense...." It is potentially misleading for the jury charge to direct the jury to "acquit" if they have a reasonable doubt as to whether the defendant is guilty of

the greater offense and "next" to consider the lesser included offense without spelling out that such "acquittal" is neither unanimous nor final at the time the jury proceeds to consider the lesser offense. "Acquittal" is a legal term that may have different connotations for jurors and attorneys.

of an interpretation is evaluated in the textual context, since it is illogical to presume that in writing a statute the legislature intended a part of the whole to be superfluous. *See id.* at 786.

Since *Boykin,* the Court of Criminal Appeals has repeatedly emphasized that the courts must seek to fulfill the legislature's purpose in enacting a statute. *See Hernandez v. State,* 127 S.W.3d 768, 772 (Tex. Crim.App.2004); *Wolfe v. State,* 120 S.W.3d 368, 370–72 (Tex.Crim.App.2003). It has likewise repeatedly emphasized that ordinarily a statute must be interpreted according to its plain meaning unless that would lead to an "absurd result that the legislature could not have intended." *Jaubert v. State,* 74 S.W.3d 1, 2 (Tex.Crim. App.2002); *Enos v. State,* 889 S.W.2d 303, 305 (Tex.Crim.App.1994). The same rules apply to jury charges, by which the intent of the Legislature in enacting statutes is implemented in particular cases.

Here, the majority's construction of the charge includes a silent unanimity requirement that contravenes the plain language of the statute by adding an additional secret term. This construction also renders the rest of the instruction, requiring consideration of lesser included offenses in cases of doubt, superfluous; and it contravenes the rule that the text should be read as a whole. *See Boykin,* 818 S.W.2d at 786; *see also Boyett,* 692 S.W.2d at 516 (holding that instruction regarding consideration of lesser included offenses "when read as a whole adequately instructs the jury on this issue"). Moreover, the majority's construction of the charge contravenes legislative intent in enacting articles 37.08, 37.09, and 37.14 of the Code of Criminal Procedure, which permit the consideration of lesser included offenses and provide for acquittal of a greater offense by conviction of a lesser, by ruling out consideration of the lesser charge in most

situations, namely, whenever the jury is less than unanimous in its belief that the defendant is not guilty of the greater offense beyond a reasonable doubt.

The majority's construction of the charge has important consequences. By prohibiting the jury from following the charge's explicit instruction to consider lesser included offenses when it is not unanimous in agreeing that the defendant should be convicted of the greater offense or when some jurors have a reasonable doubt as to whether he should be convicted of the greater, the majority's reading deprives the defendant of the substantial right to have the jurors consider whether he is guilty of the lesser offense in most cases, and it coerces them to convict him of the greater offense by precluding them from considering evidence that might change their minds. It also deprives the defendant of the right to be acquitted of the greater offense by conviction of the lesser when some of the jurors have a reasonable doubt as to whether he should be convicted of the one or the other.

For the foregoing reasons, I would hold that *Mitchel* correctly states the law and that there is no unanimity requirement in a legally correct reading of the charge submitted to the jury in this case. Thus, I would overrule appellant's first point of error insofar as appellant contends that the charge itself misstates Texas law. I would sustain it, however, insofar as appellant contends that the construction of the charge heard by the jurors in the State's jury argument, over appellant's objection, and adopted as the proper construction by the trial court, misstated Texas law.

### Jury Argument

In his second point of error, appellant argues that the trial court erred in overruling his objection to the State's argument that "Texas law requires the jury

unanimously to acquit an accused of a greater offense before it can even consider whether the accused is guilty of a lesser-included offense." Appellant contends that by overruling his objection, "the trial court gave a stamp of approval to a misstatement of the law that harmed appellant." I agree.

The majority finds no error in the State's argument that the jury could not consider the lesser charge unless "all 12, every single one of you, says, 'No, not guilty' " and its instruction, "So you're not going to get there, so I'm not going to get there, so I'm not going to spend a lot of time talking about that because that doesn't make sense." Rather, the majority states, "It is not error for the State to quote or paraphrase the jury charge during argument." *Harris*, 287 S.W.3d at 792. It, therefore, holds that the "trial court did not err in instructing the jury to agree unanimously to acquit appellant of manslaughter before considering whether appellant was guilty of the lesser-included offense of criminally negligent homicide" and it "did not err in overruling appellant's objection to the State's jury argument." *Id.*

To be permissible, jury argument must fall within one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; or (4) plea for law enforcement. *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex.Crim.App.1990); *Moore v. State*, 233 S.W.3d 32, 37 (Tex. App.-Houston [1st Dist.] 2007, no pet.). Argument that misstates the law or is contrary to the court's charge is improper. *Grant v. State*, 738 S.W.2d 309, 311 (Tex. App.-Houston [1st Dist.] 1987, pet. ref'd). Following an objectionable jury argument, an instruction by the court to disregard the argument will, however, normally obviate the error, unless the argument was so inflammatory that its prejudicial effect could not reasonably be removed by such an admonishment. *Kinnamon*, 791 S.W.2d at 89; *Melton v. State*, 713 S.W.2d 107, 114 (Tex.Crim.App.1986). "In order for an improper argument to rise to a level that mandates reversal, the argument must be extreme, or manifestly improper or inject new and harmful facts into evidence." *Kinnamon*, 791 S.W.2d at 89.

In *Almanza v. State*, the Texas Court of Criminal Appeals addressed error in the jury charge. 686 S.W.2d 157, 171 (Tex. Crim.App.1985). It held that if the error is the subject of a timely objection in the trial court, reversal is required if the error was "calculated to injure the rights of defendant," i.e., if there was "*some* harm to the defendant." *Id.* at 171. If no proper objection is made at trial, however, reversal is required only if the error was so egregious and created such harm as to deprive the defendant of a fair and impartial trial. *Id.* In both situations, the degree of harm is determined in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.*

Here, the error consisted of a misstatement of the law by the State in its jury argument, to which appellant properly objected. The error was plainly calculated to injure appellant's rights by depriving him of the opportunity to have the lesser included offense of criminally negligent homicide considered if the jurors were less than unanimous as to whether he was guilty of the greater offense of manslaughter or if any of them had a reasonable doubt as to such guilt; and it further deprived him of the right to be acquitted of the greater offense by conviction of the lesser in the event such doubt persisted after the jury's consideration of the evidence in support of both.

It is immaterial to the foregoing harm analysis that appellant was convicted of the greater offense because, given the erroneous construction of the charge the jury heard from the State with the court's approval, the jurors could reasonably have believed that they had no choice but to convict appellant of the greater offense of manslaughter or unanimously acquit him without considering the entire charge or evidence that might have mitigated in favor of the lesser included offense. Nor is there any way to determine from the fact that the jury convicted appellant of the greater charge whether some or many of them had a reasonable doubt as to whether he should have been convicted of the greater offense, but believed they could not explore the evidence in favor of the lesser to resolve that doubt, and thus felt themselves coerced to vote for conviction of the greater, or whether they unanimously did agree that he was guilty of the greater offense and none of them had a reasonable doubt that might have been resolved in favor of conviction of the lesser offense. For these reasons, I can only interpret the harm by the State's and the trial court's erroneous construction of the charge not merely as some harm—which is all that is required for reversal under the circumstances of this case—but as egregious harm that deprived appellant of his right to a fair and impartial trial on all the issues.

I would sustain appellant's second point of error.

### Conclusion

I would reverse the judgment of the trial court and remand the case for a new trial.